[906 NE2d 1033, 879 NYS2d 1]

The People of the State of New York, Respondent, v George Quinones, Appellant.

Argued January 13, 2009; decided February 24, 2009

## POINTS OF COUNSEL

*William G. Kastin,* New York City, and *Lynn W.L. Fahey* for appellant. I. Appellant was illegally seized when the police, acting on the basis of an anonymous tip containing only a general description and having no indicia of reliability, forcibly stopped him when he continued walking away. (*Florida v J.L.,* 529 US 266; *People v Moore,* 6 NY3d 496; *People v William II,* 98 NY2d 93; *People v Holmes,* 81 NY2d 1056; *Sibron v New York,* 392 US 40; *California v Hodari D.,* 499 US 621; *Terry v Ohio,* 392 US 1; *People v De Bour,* 40 NY2d 210; *People v May,* 81 NY2d 725;

*People v Carrasquillo,* 54 NY2d 248.) II. Appellant was denied his Sixth Amendment right to the effective assistance of counsel when his attorney failed to challenge the warrantless precinct search of his knapsack about 20 minutes after appellant had been cuffed behind his back and taken into police custody. (*Strickland v Washington,* 466 US 668; *People v Gokey,* 60 NY2d 309; *People v Smith,* 59 NY2d 454; *People v Baldi,* 54 NY2d 137; *Coles v Peyton,* 389 F2d 224; *People v LaBree,* 34 NY2d 257; *People v Droz,* 39 NY2d 457; *People v Evans,* 43 NY2d 160; *New York v Belton,* 453 US 454; *Chimel v California,* 395 US 752.) III. In light of *Cunningham v California* (549 US 270 [2007]), appellant was deprived of his due process and Sixth Amendment rights when, based on numerous facts not found by a jury beyond a reasonable doubt, he was adjudicated and sentenced as a discretionary persistent felony offender to a prison term of 18 years to life, instead of the maximum $3^1/_2$-to-7-year prison term for the crime of which he was convicted. (*Blakely v Washington,* 542 US 296; *Ring v Arizona,* 536 US 584; *Apprendi v New Jersey,* 530 US 466; *People v Rivera,* 5 NY3d 61; *People v Rosen,* 96 NY2d 329; *Almendarez-Torres v United States,* 523 US 224; *United States v Gaudin,* 515 US 506; *United States v Booker,* 543 US 220; *Washington v Poole,* 507 F Supp 2d 342; *Portalatin v Graham,* 478 F Supp 2d 385.)

*Charles J. Hynes, District Attorney,* Brooklyn (*Thomas S. Burka* and *Leonard Joblove* of counsel), for respondent. I. The hearing court's denial of defendant's motion to suppress physical evidence was proper. (*People v Volpe,* 60 NY2d 803; *People v Martin,* 50 NY2d 1029; *People v Harper,* 7 NY3d 882; *People v Pines,* 99 NY2d 525; *People v McIntosh,* 96 NY2d 521; *People v Harrison,* 57 NY2d 470; *Maryland v Wilson,* 519 US 408; *People v Batista,* 88 NY2d 650; *People v De Bour,* 40 NY2d 210; *People v Cantor,* 36 NY2d 106.) II. Defendant's claim of ineffective assistance of counsel is meritless. (*People v Henry,* 95 NY2d 563; *People v Benevento,* 91 NY2d 708; *People v Ford,* 86 NY2d 397; *Strickland v Washington,* 466 US 668; *People v Rivera,* 71 NY2d 705; *People v Garcia,* 75 NY2d 973; *People v Love,* 57 NY2d 998; *Eze v Senkowski,* 321 F3d 110; *Florida v Wells,* 495 US 1; *People v Johnson,* 1 NY3d 252.) III. The trial court sentenced defendant in conformity with the rulings of the United States Supreme Court in *Apprendi v New Jersey* (530 US 466 [2000]) and its progeny. (*People v Rosen,* 96 NY2d 329, 534 US 899; *People v Rivera,* 5 NY3d 61, 546 US 984; *Cunningham v California,* 549 US 270; *Blakely v Washington,* 542 US 296; *United States v Booker,* 543 US 220; *People v Bing,* 76 NY2d 331; *People*

*v Taylor,* 9 NY3d 129; *People v Damiano,* 87 NY2d 477; *People v Daniels,* 5 NY3d 738; *People v West,* 5 NY3d 740.)

**OPINION OF THE COURT**

JONES, J.

This appeal presents another *Apprendi*[1] challenge to New York's discretionary persistent felony offender sentencing scheme. The primary issue before us is whether, in light of *Cunningham v California* (549 US 270 [2007]), this sentencing scheme violates *Apprendi* and defendant's due process and Sixth Amendment rights. We again uphold the constitutionality of New York's discretionary persistent felony offender sentencing scheme and further hold that defendant's constitutional rights were not violated.

## Facts and Procedural History

On April 21, 2004, at about 12:05 P.M., the police received a radio run of a burglary in progress on the fifth floor of a six-floor apartment building located in Brooklyn, New York. The building, which is part of a New York City Housing Authority development, had two stairwells (Stairwell A and Stairwell B). The stairwells met on the fourth floor and were connected by a door. The radio run included physical descriptions of two perpetrators. Within minutes of the radio run, two police officers entered the building and split up, each going up one stairwell. On the fourth floor, the officer going up Stairwell A looked into Stairwell B through the door window and observed defendant, who matched the physical description of one of the perpetrators, as he was coming down from the fifth floor carrying a duffel bag. At about this time, the other officer was coming up Stairwell B. Seeing this, defendant quickly changed direction and proceeded to Stairwell A. When defendant opened the door to Stairwell A, he came upon the first officer and his eyes "popped open" in surprise. The officer asked defendant who he was and what he was doing in the building. Defendant, who was not a resident of the building, tried to evade the officer, who, in turn, tried to prevent defendant from leaving by reaching out and grabbing his arm. Defendant tried to break free by swinging at the officer with his other arm. After a brief struggle, the police subdued defendant and placed him under arrest. One of the officers went to the fifth floor (the floor defendant was com-

---

1. *Apprendi v New Jersey,* 530 US 466 (2000).

ing from) where he discovered that the door to apartment 5-I was open, the lock on the door broken, the door frame damaged and the apartment ransacked. After taking defendant to a police precinct for processing, the police officers searched the bag defendant had been carrying and recovered burglary tools and property later determined to be property stolen during the burglary.

Defendant, arguing that his arrest was the product of an illegal stop and detention, and that everything flowing from this illegality was tainted, moved to suppress the statement he made to a police officer after his arrest (he confessed to participating in the burglary as a "lookout") and the property recovered from his duffel bag. Supreme Court held a *Dunaway/Huntley* hearing and considered defendant's arguments. In light of the evidence adduced at the hearing, including the fully credited testimony of the arresting police officer, Supreme Court rejected defendant's arguments and denied the motion in its entirety.

A jury ultimately convicted defendant of burglary in the third degree (Penal Law § 140.20 ["(a) person is guilty of (third degree burglary) when he knowingly enters or remains unlawfully in a building with intent to commit a crime therein"]), a class D felony which gives rise to an indeterminate sentence. Under the Penal Law, the maximum term for such sentence is at least three years and no more than seven years (Penal Law § 70.00 [2] [d]). Prior to sentencing, the People moved for Supreme Court to sentence defendant as a discretionary persistent felony offender. In so moving, the People sought to treat defendant's class D felony as a class A-I felony (Penal Law § 70.10 [2]) and have defendant sentenced to an indeterminate prison term of 25 years to life (Penal Law § 70.00 [2] [a]; [3] [a] [i]). Defendant opposed the motion, arguing that the discretionary persistent felony offender sentencing scheme was unconstitutional under *Apprendi* and its progeny.

Supreme Court held a hearing pursuant to CPL 400.20 to determine whether to adjudicate defendant a discretionary persistent felony offender and impose a recidivist sentence. As set forth in CPL 400.20 (5), the court first concluded that defendant was a discretionary persistent felony offender based on defendant's four prior felony convictions—a 1983 robbery conviction, a 1986 grand larceny conviction, a 1989 attempted robbery conviction and a 1994 attempted criminal sale of a controlled substance conviction (Penal Law § 70.10 [1] [a]). The court determined that defendant was eligible to be sentenced as

a discretionary persistent felony offender and that a recidivist sentence was warranted. Defendant was sentenced to an indeterminate prison term of 18 years to life.[2] The Appellate Division unanimously affirmed, concluding, among other things, that the police had reasonable suspicion to stop and detain defendant based on his "attempted flight" and "the temporal proximity between the reported robbery and the officers' arrival on the scene" (45 AD3d 874, 875 [2007]). The court also concluded that in light of this Court's decisions in *People v Rosen* (96 NY2d 329 [2001]) and *People v Rivera* (5 NY3d 61 [2005]), defendant's *Apprendi* challenge lacked merit. A Judge of this Court granted defendant leave to appeal (10 NY3d 815 [2008]).

## Discussion

Defendant seeks to have his conviction reversed on two grounds. First, he argues that Supreme Court erred in not suppressing his confession and the property recovered from his bag because they were the product of an illegal stop and detention. Second, defendant claims ineffective assistance of trial counsel based on his counsel's failure to argue that even if the stop and detention were legal, the recovered property should have been suppressed because of the illegality of the warrantless search of defendant's bag at the precinct.

Regarding defendant's first contention, Supreme Court's determination that the police possessed reasonable suspicion to stop and detain defendant (*see People v De Bour*, 40 NY2d 210, 223 [1976]; *People v Hollman*, 79 NY2d 181, 184-185 [1992]; *People v McIntosh*, 96 NY2d 521, 525 [2001]), a mixed question of law and fact, was not disturbed by the Appellate Division and is supported by the record. Accordingly, this determination is beyond our further review (*see People v Harrison*, 57 NY2d 470, 477-478 [1982]; *People v Allen*, 9 NY3d 1013, 1015 [2008]).

With respect to defendant's ineffective assistance claim, we note that the facts surrounding the search of defendant's bag were not fully developed at the suppression hearing. Ac-

---

2. The court noted that
   "[d]efendant's background reveals a twenty-year criminal history which includes four felony convictions, three of which are violent felonies. . . . In addition, [d]efendant has six misdemeanor convictions . . . Thus, [d]efendant's criminal record establishes that he has made a career of crime, that he lacks respect for people and their property, and that he is a menace to society."

cordingly, it is not clear what counsel knew or did not know regarding the search, such as whether the search was in accordance with police inventory procedures. Nor is it clear that this argument would have resulted in suppression of the evidence. Therefore, on the record before us, we are unable to determine that counsel's assistance was ineffective.

■ Defendant also argues that his recidivist sentence violates *Apprendi*. Specifically, defendant asserts that in light of *Cunningham*, the sentence violates his right to due process and trial by jury, and New York's discretionary persistent felony offender sentencing scheme is constitutionally infirm. Defendant's arguments are unavailing.

In *Apprendi v New Jersey* (530 US 466 [2000]), the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt" (*Apprendi*, 530 US at 490). In so holding, the *Apprendi* Court's goal was to prevent legislative attempts to "remove from the [province of the] jury" factual determinations that impact the maximum punishment available for a statutory offense (*id.* [internal quotation marks omitted]).[3] *Apprendi* and its progeny are rooted in the United States Constitution's Sixth Amendment, which provides every person accused of a crime the right to "trial[ ] by an impartial jury," and emanated from the Supreme Court's prior decisions in *Almendarez-Torres v United States* (523 US 224, 226-227 [1998] [judicial fact-finding of a defendant's prior conviction and consideration of same at sentencing is not a violation of the Sixth Amendment]) and *Jones v United States* (526 US 227, 239-252 [1999] [Court recognized that judicial fact-finding, outside the finding of a defendant's prior convictions, operating

---

**3.** The *Apprendi* rule seeks to preserve the jury's historic role as a bulwark between the State and the accused at the trial for an alleged offense (*see Apprendi*, 530 US at 477). In further support of the rule, the Supreme Court stated that

"structural democratic constraints exist to discourage legislatures from enacting penal statutes that expose *every* defendant convicted of . . . [an offense] to a maximum sentence exceeding that which is, in the legislature's judgment, generally proportional to the crime. . . . Our rule ensures that a State is obliged to make its choices concerning the substantive content of its criminal laws with full awareness of the consequences, unable to mask substantive policy choices of exposing all who are convicted to the maximum sentence it provides" (*id.* at 490 n 16 [internal quotation marks omitted]).

to increase a defendant's maximum punishment would diminish the role of the jury, thus creating a genuine issue under the Sixth Amendment]).[4]

At issue in *Apprendi* was a New Jersey statutory scheme that allowed a judge to increase a defendant's punishment beyond the maximum sentence range authorized for the crime of possession of a firearm for an unlawful purpose based on the judge's finding by a preponderance of the evidence that defendant also committed a crime with the intent to intimidate based on race, religion, color, gender, ethnicity, sexual orientation or handicap. The Supreme Court held that because this sentencing scheme (1) removed what amounts to an element of a greater offense that would ordinarily be submitted to the jury (and proved beyond a reasonable doubt), and (2) allowed a judge to decide the fact using a lesser standard of proof and, thereby, increase the sentence beyond the permissible maximum sentence range, it violated the Sixth Amendment right to a trial by jury.

The common denominator of the sentencing schemes invalidated or partially struck down in the wake of *Apprendi* is that they provided for an increase to defendant's punishment—beyond the range authorized by the jury's finding of guilt or defendant's admission—based on additional facts found by a judge using a preponderance-of-the-evidence standard (*see e.g. Ring* [sentencing scheme at issue provided that defendant convicted of first degree murder could only be sentenced to life imprisonment unless the judge determined the existence of aggravating factors warranting the imposition of the death penalty]; *Blakely* [sentencing scheme permitted an enhanced sentence beyond the statutory maximum based on the judge's finding that defendant committed the crime with "deliberate cruelty" (542 US at 298)]; *Booker* [portion of the mandatory

---

**4.** *See Ring v Arizona*, 536 US 584, 602 (2002) (Court clarified *Apprendi* rule by stating, "If a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact—no matter how the State labels it—must be found by a jury beyond a reasonable doubt"); *Blakely v Washington*, 542 US 296, 303, 304 (2004) (Court stated: 1. the " 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*," and 2. "[w]hen a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment' . . . and the judge exceeds his proper authority"); *United States v Booker*, 543 US 220, 232 (2005) (a judge's determination of a fact that elevates defendant's sentence above the "statutory maximum," i.e., above the range authorized by a jury's verdict or defendant's admission of guilt, violates the Sixth Amendment).

Federal Sentencing Guidelines required judicial fact-finding that could increase the maximum potential sentence of a defendant]). California's determinate sentencing law (DSL) at issue in *Cunningham* was no different.

In describing California's DSL, the Supreme Court noted that

"[f]or most offenses, including Cunningham's, the DSL regime is implemented in the following manner. The statute defining the offense prescribes three precise terms of imprisonment—a lower, middle, and upper term sentence. *E.g.*, Penal Code § 288.5 (a) (West 1999) (a person convicted of continuous sexual abuse of a child 'shall be punished by imprisonment in the state prison for a term of 6, 12, or 16 years'). See also [*People v Black*], 35 Cal. 4th [1238,] 1247 . . . Penal Code § 1170 (b) (West Supp. 2006) controls the trial judge's choice; it provides that 'the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime.' '[C]ircumstances in aggravation or mitigation' are to be determined by the court after consideration of several items: the trial record; the probation officer's report; statements in aggravation or mitigation submitted by the parties, the victim, or the victim's family; 'and any further evidence introduced at the sentencing hearing.' *Ibid*." (*Cunningham*, 549 US at 277.)

In addition, the DSL

"directed the State's Judicial Council to adopt Rules guiding the sentencing judge's decision whether to '[i]mpose the lower or upper prison term.' Penal Code § 1170.3 (a) (2) (West 2004). Restating [Penal Code] § 1170 (b), the Council's Rules provide that '[t]he middle term shall be selected unless imposition of the upper or lower term is justified by circumstances in aggravation or mitigation.' Rule 4.420 (a). 'Circumstances in aggravation,' as crisply defined by the Judicial Council, means '*facts* which justify the imposition of the upper prison term.' Rule 4.405 (d) (emphasis added). Facts aggravating an offense, the Rules instruct, 'shall be established by a preponderance of the evidence,' Rule 4.420 (b), and must be 'stated orally on the record.' Rule 4.420 (e).

"The Rules provide a nonexhaustive list of aggravating circumstances, including [facts relating to the crime committed and defendant] . . . Beyond the enumerated circumstances, 'the judge is free to consider any "additional criteria reasonably related to the decision being made." ' *Black*, 35 Cal. 4th, at 1247. 'A fact that is an element of the crime,' however, 'shall not be used to impose the upper term.' Rule 4.420 (d). In sum, California's DSL, and the rules governing its application, direct the sentencing court to start with the middle term, and to move from that term only when the court itself finds and places on the record facts—whether related to the offense or the offender—beyond the elements of the charged offense" (*id.* at 278-279 [footnotes and some citations omitted]).

Because California's DSL, by its plain terms, authorized the judge, not the jury, to find facts exposing defendant to an elevated upper term sentence, the Supreme Court held that this sentencing scheme violated defendant's Sixth Amendment right to a trial by jury and *Apprendi* (*see id.* at 274). Citing *Blakely*, the *Cunningham* Court made clear that

"broad discretion to decide what facts may support an enhanced sentence, or to determine whether an enhanced sentence is warranted in any particular case, does not shield a sentencing system from the force of our [*Apprendi*] decisions. If the jury's verdict alone does not authorize the sentence, if, instead, the judge must find an additional fact to impose the longer term, the Sixth Amendment requirement is not satisfied" (*id.* at 290, citing *Blakely*, 542 US at 305).

Here, defendant argues that New York's discretionary persistent felony offender sentencing scheme suffers from the same constitutional infirmity as California's DSL because the "higher persistent felony offender range cannot be imposed without the judicially-found fact that the 'nature and circumstances' of the criminal conduct and the 'history and character' of the defendant warrant lifetime supervision in the public interest." Defendant's view of New York's sentencing scheme is inaccurate.

The discretionary persistent felony offender sentencing scheme is comprised of two statutes: Penal Law § 70.10 and

Criminal Procedure Law § 400.20. Under Penal Law § 70.10 (1) (a), "[a] persistent felony offender is a person, other than a persistent violent felony offender as defined in [Penal Law § ] 70.08, who stands convicted of a felony after having previously been convicted of two or more felonies." Penal Law § 70.10 (2) further provides:

> "When the court has found, pursuant to [Criminal Procedure Law § 400.20], that a person is a persistent felony offender, and when it is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and life-time supervision will best serve the public interest, the court, in lieu of imposing the sentence of imprisonment authorized [under Penal Law article 70] for the crime of which such person presently stands convicted, may impose the sentence of imprisonment authorized by that section for a class A-I felony. In such event the reasons for the court's opinion shall be set forth in the record."

Criminal Procedure Law § 400.20 sets forth the procedure for determining whether a defendant should be sentenced as a persistent felony offender. Under Criminal Procedure Law § 400.20 (1),

> "[s]uch sentence may not be imposed unless, based upon evidence in the record of a hearing held pursuant to this section, the court (a) has found that the defendant is a persistent felony offender . . . , and (b) is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct are such that [such sentence is] warranted to best serve the public interest."

At the hearing provided for under this sentencing scheme, the burden is on the People to prove beyond a reasonable doubt that defendant is a persistent felony offender (CPL 400.20 [5]). Once defendant has been proven to be a persistent felony offender,

> "[m]atters pertaining to the defendant's history and character and the nature and circumstances of his criminal conduct may be established by any relevant evidence, not legally privileged, regardless of admissibility under the exclusionary rules of evi-

dence, and the standard of proof with respect to such matters shall be a preponderance of the evidence" (*id.*).

After the hearing, if the court "is of the opinion that a persistent felony offender sentence is warranted, it may sentence the defendant in accordance with [Penal Law § 70.10 (2)]" (CPL 400.20 [9]). In sum, under New York's discretionary persistent felony offender sentencing scheme, once the People prove beyond a reasonable doubt that a defendant is a persistent felony offender (i.e., a twice-prior convicted felon), defendant is eligible to be sentenced as a discretionary persistent felony offender and the court may consider defendant's "history and character" to determine whether a discretionary persistent felony offender sentence is warranted.

This Court has on two occasions conducted an extensive analysis regarding whether New York's discretionary persistent felony offender sentencing scheme violates *Apprendi* (*see People v Rosen*, 96 NY2d 329 [2001], *cert denied* 534 US 899 [2001]; *People v Rivera*, 5 NY3d 61 [2005], *cert denied* 546 US 984 [2005]). In *Rosen*, we held that upon proving that a defendant is a twice-prior convicted felon, the sentencing court may review defendant's history and character as well as the nature and circumstances of defendant's criminal conduct to determine whether to impose a recidivist (enhanced) sentence (CPL 400.20 [5]) and that, under the discretionary persistent felony offender statutes, prior felony convictions are the sole determinant of whether a defendant is eligible for recidivist sentencing as a persistent felony offender (*Rosen*, 96 NY2d at 335). *Rivera*, which was decided after *Blakely* and *Booker*, upheld *Rosen* (in reasoning and result), the discretionary persistent felony offender statutes and the recidivist sentence imposed (*Rivera*, 5 NY3d at 63).[5] As we stated in *Rivera*,

"the relevant question under the United States Constitution is not whether those facts were essential to the trial court's opinion (CPL 400.20 [1] [b]), but whether there are any facts other than the predicate convictions that must be found to make recidivist sentencing possible (*see Blakely*, 542 US at 303-

---

**5.** Applying *Rivera*, we have rejected, as meritless, four challenges to the constitutionality of the discretionary persistent felony offender statutes (*see People v Daniels*, 5 NY3d 738 [2005]; *People v West*, 5 NY3d 740 [2005]; *People v Leon*, 10 NY3d 122 [2008]; *People v Rawlins*, 10 NY3d 136 [2008]). Note, *Leon* and *Rawlins* were decided after *Cunningham*.

304). Our answer is no. As we explained in *Rosen*, the predicate felonies are both necessary and sufficient conditions for imposition of the authorized sentence for recidivism; that is why we pointedly called the predicate felonies the 'sole' determinant (96 NY2d at 335). By this unequivocal statement, we meant, and today confirm, that Criminal Procedure Law § 400.20, by authorizing a hearing on facts relating to the defendant's history and character, does not grant defendants a legal entitlement to have those facts receive controlling weight in influencing the court's opinion. The statutory language requiring the sentencing court to consider the specified factors and to articulate the reason for the chosen sentence grants defendants a right to an airing and an explanation, not a result. . . .

"To reiterate our analysis in *Rosen*, a defendant adjudicated as a persistent felony offender has a statutory right to present evidence that might influence the court to exercise its discretion to hand down a sentence as if no recidivism finding existed, while the People retain the burden to show that the defendant deserves the higher sentence. Nevertheless, once a defendant is adjudged a persistent felony offender, a recidivism sentence cannot be held erroneous as a matter of law, unless the sentencing court acts arbitrarily or irrationally" (*id.* at 67-68 [footnote omitted]).

The preceding discussion makes clear that California's DSL and New York's discretionary persistent felony offender sentencing scheme are fundamentally different. The DSL accorded judges discretion to find the facts necessary for the imposition of an enhanced sentence (i.e., one beyond the relevant sentencing range authorized by a jury's verdict based on findings other than a defendant's prior convictions). That is, a defendant was only eligible for an enhanced sentence upon a judicial determination of certain facts other than recidivist status. Thus, the DSL is precisely the type of sentencing scheme that has been repeatedly invalidated under *Apprendi*.

New York's sentencing scheme, in contrast, is a recidivist sentencing scheme. That is, under New York's scheme, a defendant is subject to an enhanced sentence based solely on the existence of two prior felony convictions. This fact alone places

the New York scheme outside the scope of the *Apprendi* rule. Another distinguishing feature of New York's sentencing scheme is that it is only after a defendant's eligibility for an enhanced sentence is determined that a judge is given the discretion to choose *the appropriate sentence within a sentencing range prescribed by statute.* A common theme of the *Apprendi* decisions is that sentencing schemes allowing for such discretion are permissible under the Sixth Amendment. For example, the *Apprendi* Court stated that

> "nothing in [the Sixth Amendment's] history suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment *within the range* prescribed by statute. We have often noted that judges in this country have long exercised discretion of this nature in imposing sentence *within statutory limits* in the individual case" (*Apprendi*, 530 US at 481; *see Booker*, 543 US at 235 [the Sixth Amendment does not prohibit a judge from exercising his or her discretion within a sentence range authorized by a jury's verdict or defendant's admission of guilt—such an exercise does not impinge on the jurors' role in determining the upper limits of a defendant's sentence]).

Regarding the discretion a sentencing court must exercise, the Supreme Court further explained:

> "Of course indeterminate [sentencing] schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal *right* to a lesser sentence—and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned. In a system that says the judge may punish burglary with 10 to 40 years, every burglar knows he is risking 40 years in jail. In a system that punishes burglary with a 10-year sentence, with another 30 added for use of a gun, the burglar who enters a home unarmed is *entitled* to no more than a 10-year sentence—and by reason of the Sixth Amendment

the facts bearing upon that entitlement must be found by a jury" (*Blakely*, 542 US at 309).

Taking the foregoing into account, defendant's argument that the higher persistent felony offender range cannot be imposed without judicially-found facts regarding the "nature and circumstances" of defendant's criminal conduct and defendant's "history and character" misses the point. Unlike the sentencing schemes in *Apprendi, Ring, Blakely, Booker* and *Cunningham*, all of which effectively provided for judicial fact-finding of an element(s) of an offense as a prerequisite to enhancing a sentence *beyond* the relevant sentencing range, the New York sentencing scheme, after a defendant is deemed eligible to be sentenced as a persistent felony offender, requires that the sentencing court make a qualitative judgment about, among other things, the defendant's criminal history and the circumstances surrounding a particular offense in order to determine whether an enhanced sentence, *under* the statutorily prescribed sentencing range, is warranted. Stated differently, New York's sentencing scheme, by requiring that sentencing courts consider defendant's "history and character" and the "nature and circumstances" of defendant's conduct in deciding where, within a range, to impose an enhanced sentence, sets the parameters for the performance of one of the sentencing court's most traditional and basic functions, i.e., the exercise of sentencing discretion.[6]

Finally, the *Cunningham* Court considered and struck down a sentencing scheme similar to those in *Blakely* and *Booker*. In so ruling, the Supreme Court did not expand the contours of the *Apprendi* rule so that it would be applicable to New York's recidivist sentencing scheme (*see Cunningham*, 549 US at 281 [a court's application of the *Apprendi* rule must honor the "longstanding common-law practice" that provides its foundation]; *Oregon v Ice*, 555 US —, —, 129 S Ct 711, 714 [2009] [Court stated that it "has not extended the *Apprendi* and *Blakely* line of decisions beyond the offense-specific context that supplied the historic grounding for the decisions"]).

---

**6.** The exercise of a trial court's sentencing discretion is subject to review by the Appellate Division. In the exercise of its discretion in the interest of justice (*see* CPL 470.20 [6]), the Appellate Division "may conclude that a persistent felony offender sentence is too harsh or otherwise improvident" (*Rivera*, 5 NY3d at 68).

Based on the foregoing, we hold that *Cunningham* does not render New York's discretionary persistent felony offender sentencing scheme unconstitutional.

Accordingly, the order of the Appellate Division should be affirmed.

Judges CIPARICK, GRAFFEO, READ, SMITH and PIGOTT concur; Chief Judge LIPPMAN taking no part.

Order affirmed.