=================================================================
This memorandum is uncorrected and subject to revision before
publication in the New York Reports.
-----------------------------------------------------------------
No. 226
The People &c.,
          Respondent,
        v.
Dwight Giles,
          Appellant.
----------------------
No. 227
The People &c.,
          Respondent,
        v.
Sean Hawkins,
          Appellant.


Case No. 226:
          Jan Hoth, for appellant.
          Sheryl Feldman, for respondent.

Case No. 227:
          Michael W. Warren, for appellant.
          Sholom J. Twersky, for respondent.



MEMORANDUM:

          In People v Giles, the order of the Appellate Division

should be affirmed.  In People v Hawkins, the order of the

Appellate Term should be affirmed.

          Defendants' motions to set aside the verdict pursuant

to CPL 330.30 (1) were procedurally improper because they were

- 1 -

premised on matters outside the existing trial record, and CPL
330.30 (1) did not permit defendants to expand the record to
include matters that did not "appear[ ] in the record" prior to
the filing of the motions (CPL 330.30 [1]).  We express no
opinion on whether a trial court has the authority to consider a
CPL 330.30 (1) motion as a premature de facto CPL 440.10 motion
in certain cases because defendants here did not ask the trial
courts to consider their motions as such, and in each case, the
trial court neither deemed the motion to be a premature CPL
440.10 motion nor decided the motion in accordance with the
criteria and procedures delineated in CPL 440.30 (cf. People v
Wolf, 98 NY2d 105, 118-119 [2002]).  In People v Giles,
defendant's challenge to the constitutionality of his sentencing
as a persistent felony offender is without merit (see People v
Bell, 15 NY3d 935, 936 [2010]; People v Battles, 16 NY3d 54, 59
[2010]; People v Quinones, 12 NY3d 116, 129-130 [2009]).

People v Dwight Giles, People v Sean Hawkins

Nos. 226 and 227

SMITH, J. (concurring):

I join the majority memorandum, and add some comments on each case.

**I**

In <u>People v Hawkins</u>, I agree with Judge Pigott that a court has power, in a proper case, to entertain a motion under CPL 440.10 even where the motion is made before the entry of

- 1 -

judgment -- i.e., to overlook the technical defect that the
motion is premature.  I agree with the majority, however, that
the motion in Hawkins cannot be treated as a CPL 440.10 motion,
because the proper procedures were not followed.

## II

The main purpose of this concurrence is to respond to
Judge Abdus-Salaam's dissenting opinion in People v Giles.

## A

In Apprendi v New Jersey (530 US 466 [2000]) and a
number of later cases, the United States Supreme Court held that,
under the Due Process Clause of the Fourteenth Amendment to the
federal Constitution, a defendant's sentence may not be enhanced
beyond what would otherwise be its maximum term on the basis of
facts that are not found by a jury beyond a reasonable doubt.
One exception has been recognized: under Almendarez-Torres v
United States (523 US 224 [1998]), a case left undisturbed by
Apprendi (530 US at 489-490) and never subsequently overruled,
"the fact of a prior conviction" may be found by a judge
(Apprendi, 530 US at 490).

In People v Rosen (96 NY2d 329, 335 [2001]) we
interpreted New York's persistent felony offender statute (PFO
statute) to make prior convictions "the sole determinate" of
whether a defendant is eligible for enhanced sentencing.  We
reaffirmed and explained the holding of Rosen in People v Rivera
(5 NY3d 61 [2005]) and People v Quinones (12 NY3d 116, 122-131

[2009]) (see also People v Battles, 16 NY3d 54, 59 [2010]; People v Bell, 15 NY3d 935, 936 [2010]).

It seems to me that the statute as we have interpreted it is unquestionably valid under Apprendi and Almendarez-Torres. Indeed, an en banc panel of the United States Court of Appeals for the Second Circuit has unanimously agreed that the statute is constitutional on its face (Portalatin v Graham, 624 F3d 69 [2d Cir 2010]; see id. at 100 [Winter, J., dissenting]). Whether we correctly interpreted the statute in Rosen and later cases is a different question. I admit that that question -- one of New York, not federal, law -- is fairly debatable, but I am somewhat puzzled that the debate continues after all these decisions and all these years.

**B**

The substantive part of the PFO statute is found in section 70.10 of the Penal Law. A persistent felony offender is defined as anyone (other than a persistent violent felony offender, see Penal Law § 70.08), "who stands convicted of a felony after having previously been convicted of two or more felonies" (Penal Law § 70.10 [1] [a]). Penal Law § 70.10 (2) authorizes a court that has found a person to be a persistent felony offender to impose the sentence authorized for a class A-I felony when the court "is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and

life-time supervision will best serve the public interest."

The PFO statute also includes procedural provisions, contained both in the Penal Law and in the Criminal Procedure Law.  Under CPL 400.20, an enhanced sentence may not be imposed unless, "based upon evidence in the record of a hearing pursuant to this section," the court has found that the defendant is a persistent felony offender and "is of the opinion" contemplated by Penal Law § 70.10  as to defendant's history and character and the nature and circumstances of his conduct (CPL 400.20 [1]).  In directing a hearing, the court must annex to and file with its order the dates and places of the convictions that render the defendant a persistent felony offender and "[t]he factors in the defendant's background and prior criminal conduct which the court deems relevant for the purposes of sentencing the defendant as a persistent felony offender" (CPL 400.20 [3]).  The burden of proof at the hearing is on the People (CPL 400.20 [5]).  Defendant's status as a persistent felony offender must be proved beyond a reasonable doubt, but "[m]atters pertaining to the defendant's history and character and the nature and circumstance of his criminal conduct may be established by any relevant evidence . . . and the standard of proof with respect to such matters shall be a preponderance of the evidence" (id.).  If the court chooses the enhanced sentence "the reasons for the court's opinion shall be set forth in the record" (Penal Law § 70.10 [2]).

If the PFO statute were read -- as it could be -- to mean that a court may impose an enhanced sentence only after it has found, in a non-jury proceeding, facts "pertaining to the defendant's history and character and the nature and circumstances of his criminal conduct," it would raise serious problems under Apprendi.  Mindful of our obligation to adopt, where possible, an interpretation that renders a statute constitutional, we held in Rosen, and have several times reaffirmed, that that is not what the statute means.  We said in Rosen:

> "It is clear from the . . . statutory framework that the prior felony convictions are the sole determinate of whether a defendant is subject to enhanced sentencing as a persistent felony offender. Then, the court must consider other enumerated factors to determine whether it 'is of the opinion that a persistent felony offender sentence is warranted' (CPL 400.20 [9]).  As to the latter, the sentencing court is thus only fulfilling its traditional role -- giving due consideration to agreed-upon factors -- in determining an appropriate sentence within the permissible statutory range."

 (96 NY2d at 335.)

In Rivera, we explained and expanded on Rosen's holding:

> "We could have decided Rosen differently by reading the statutes to require judicial factfinding as to the defendant's character and

criminal acts <u>before</u> he became eligible for a persistent felony offender sentence.  If we had construed the statutes to require the court to find additional facts about the defendant before imposing a recidivism sentence, the statutes would violate <u>Apprendi</u>.  But we did not read the law that way.  Under our interpretation of the relevant statutes, defendants are eligible for persistent felony offender sentencing based <u>solely</u> on whether they had two prior felony convictions.  Thus, as we held in <u>Rosen</u>, no further findings are required."

(5 NY3d at 67.)

Once again in <u>Quinones</u>, responding to an argument that the PFO statute was unconstitutional under <u>Cunningham v California</u> (549 US 270 [2007]), we said:

"[D]efendant argues that New York's discretionary persistent felony offender sentencing scheme suffers from the same constitutional infirmity as [the California statute in <u>Cunningham</u>] because the 'higher persistent felony offender range cannot be imposed without the judicially-found fact that the "nature and circumstances" of the criminal conduct and the "history and character" of the defendant warrant lifetime supervision in the public interest.'  Defendant's view of New York's sentencing scheme is inaccurate."

***

"New York's sentencing scheme . . . is a recidivist sentencing scheme. That is, under New York's scheme, a defendant is subject to an enhanced sentence based solely on the

> existence of two prior felony
> convictions. . . . [I]t is only
> after a defendant's eligibility for
> an enhanced sentence is determined
> that a judge is given the
> discretion to choose the
> appropriate sentence within a
> sentencing range prescribed by
> statute."

(12 NY3d at 125, 128-129.)

In short, as we have read the PFO statute, it might as well say: "A defendant with two prior felonies may, in the court's discretion, be sentenced as provided by law for a class A-I felony. In exercising its discretion, the court shall take into account such facts as it deems relevant pertaining to the defendant's history and character and the nature and circumstances of his criminal conduct." Such a statute poses no arguable problem under Apprendi. It enhances the statutory maximum solely on the basis of prior convictions, as Almendarez-Torres permits, and allows the sentencing judge to do what sentencing judges normally do -- to choose, in his or her discretion, a sentence equal to or less than the statutory maximum. Perhaps it is unusual to require, as the PFO statute does, that the court conduct an evidentiary hearing, governed by specified burdens of proof, to find the facts that it deems relevant to the exercise of its discretion, and to set forth the reasons for its discretionary decision on the record. But these requirements, unusual or not, are not unconstitutional.

The decision of the Second Circuit in Portalatin

confirms that the constitutionality of the PFO statute as we have interpreted it is beyond fair doubt.  In Portalatin, the en banc court, by a vote of 9-3, vacated the previous opinion of a three judge panel (Besser v Walsh, 601 F3d 163 [2d Cir 2010]) and denied the habeas corpus petitions of three New York prisoners who claimed that their sentences under the PFO statute violated Apprendi.  For present purposes, what I find most significant in Portalatin is that all 12 judges agreed on the facial constitutionality of the statute.  While Besser, the panel opinion, can be read as holding the PFO statute unconstitutional on its face, the Portalatin dissenters (including two of the three judges who decided Besser) conceded that any such holding would be incorrect.  Judge Winter said:

> "my colleagues have successfully defended the PFO statute against a facial attack by showing that the predicate felonies may alone justify a Class A-I sentence"

(624 F3d at 100 [dissenting opinion]).

The Portalatin dissenters disagreed with the majority only as to whether the statute had been unconstitutionally applied to the cases before them (see id. at 95).

In short, Rosen and later cases interpret the PFO statute in a way that eliminates any serious question about its constitutionality under Apprendi.  Whether we were correct as a matter of New York law to adopt that interpretation is a different, and fairly debatable, question.  Certainly, in

choosing that interpretation, we were influenced, as we should be, by a desire to save the constitutionality of the statute (see McKinney's Cons. Laws of N.Y., Book 1, Statutes § 150; Tauza v Susquehanna Coal Co., 220 NY 259, 267 [1917] [Cardozo, J., quoting United States v Jin Fuey Moy, 241 US 394, 401 [1916] ["A statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional, but also grave doubts upon that score"]).  I think we were right.

It is possible, however, to argue that we went too far, and did not merely interpret the statute but rewrote it in order to save it (see Shechtman, Is Persistent Felony Offender Statute Constitutional?, New York Law Journal [January 4, 2011]). Essentially this argument has been ably made by three dissenting Judges in two of our prior cases (see Rivera, 5 NY3d at 71-76 [Kaye, C.J., dissenting]; id. at 76-83 [Ciparick, J., dissenting]; Battles, 16 NY3d at 59-68 [Lippman, C.J., dissenting]), and it is ably made again by Judge Abdus-Salaam today.  But I respectfully suggest that, at this late date, the question should be considered settled.

People of the State of New York v Dwight Giles
No. 226

People of the State of New York v Sean Hawkins
No. 227

ABDUS-SALAAM, J. (concurring in People v Hawkins, concurring in part and dissenting in part in People v Giles):

As the Court correctly disposes of defendants' post-verdict motions in these cases, I concur with its memorandum decision in full in People v Hawkins and in part in People v Giles. In Giles, I dissent from the Court's decision to uphold defendant's sentence because the trial court made additional fact findings essential to elevate defendant's punishment beyond the maximum authorized by the jury's verdict, in violation of the United States Supreme Court's Apprendi line of cases (see Apprendi v New Jersey, 530 US 466, 490 [2000]).

Under the familiar Apprendi rule, "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt" (United States v Booker, 543 US 220, 244 [2005]; see Apprendi, 530 US at 490). Therefore, where a sentencing statute places a defendant in an entirely different sentencing range based on certain facts, those facts, other than the existence of a prior conviction, must be found by the jury rather than the judge (see Cunningham v California, 549 US 270, 275 [2007]; Booker, 543 US at 234-244).

- 1 -

But once the jury has found the facts that place the defendant within a particular statutory sentencing range, the court may exercise its traditional discretion to fashion a particular sentence within the range based on a variety of factual considerations related to the defendant's background and crimes (see Southern Union Co. v United States, __US__, 132 S Ct 2344, 2353 [2012]; Cunningham, 549 US at 288-293).

Under Penal Law § 70.10 and CPL 400.20, a court must make two findings of fact before it can impose a sentence within the heightened range specified for persistent felony offenders. First, the court must find, pursuant to the procedures laid out in CPL 400.20, that the defendant "is a persistent felony offender" because he or she "stands convicted of a felony after having previously been convicted of two or more felonies" (Penal Law § 70.10 [1] [a]; see Penal Law § 70.10 [2]; CPL 400.20 [1]). "[A]nd," second, the court must be "of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and life-time supervision will best serve the public interest" (Penal Law § 70.10 [2]; see CPL 400.20 [1]). To reach the essential and self-evidently fact-driven "opinion," the court "must then make such findings of fact as it deems relevant to the question of whether a persistent felony offender sentence is warranted" (CPL 400.20 [9]). The People need only prove the existence of the aggravating background and circumstances factors

by a preponderance of the evidence (see CPL 400.20 [5]).

This recitation of the statutory terms suffices to show that the relevant statutes violate the Apprendi rule.  Although the first essential finding of the existence of the defendant's prior convictions is not subject to Apprendi's prohibition (see Booker, 543 US at 244; Almendarez-Torres v United States, 523 US 224, 239-247 [1998]), Apprendi and its progeny bar the sentencing judge from making the second requisite finding that the defendant's character, history and criminal conduct warrant enhanced sentencing.  Because neither a jury verdict nor a guilty plea encompasses the second fact finding that is a prerequisite to punishment under an elevated statutory sentencing range, the persistent felony offender sentencing statutes improperly require a judge, as opposed to a jury, to find additional facts essential to the defendant's punishment beyond the maximum authorized by a guilty verdict or plea.  On its face, then, the persistent felony offender sentencing scheme violates the Apprendi rule, and those who, like defendant Giles, are sentenced under that scheme are entitled to vacatur of their sentences.

I acknowledge that we have consistently rejected Apprendi challenges to the statutes at issue, basically reasoning that the statutes do not make a judicial fact finding about the defendant's character and background a prerequisite for enhanced sentencing but rather entail a mere exercise of traditional judicial discretion to place the defendant within a single broad

sentencing range authorized solely by his or her prior felonies
(see People v Rivera, 5 NY3d 61, 69 [2005]; People v Rosen, 96
NY2d 329, 334-336 [2001]).  But as explained in detail by the
partial dissent in People v Battles (16 NY3d 54 [2010]), that
interpretation of the New York sentencing regime is no more able
to shield it from constitutional challenge than was the
California courts' dubious interpretation of the sentencing
scheme invalidated by the Supreme Court in California v
Cunningham, supra (see Battles, 16 NY3d at 62-68 [Lippman, C.J.,
dissenting in part]).

Indeed, that is so because the rationale for our prior
decisions in this area largely proceeds from a flawed assumption
clearly rejected by the Supreme Court in Cunningham.  Under that
assumption, the sentencing court supposedly does not unlawfully
increase the defendant's maximum punishment by selecting a
heightened sentencing range based on facts other than the
existence of the defendant's prior and current convictions
instead of choosing a sentencing range based solely on the
aforementioned convictions.  In either case, the argument goes,
the court is really just making a discretionary choice of where
to sentence the defendant within a single expanded range
encompassing both the range authorized by the convictions and the
one authorized by the additional facts (see id.; see also
Cunningham, 549 US at 289-293).  As the Supreme Court and the
Battles dissent observed, this theory does not withstand close

scrutiny because the relevant statutory maximum authorized by the jury's verdict and the defendant's convictions remains distinct from the one authorized by the supposedly discretionary judicial fact findings, and "broad discretion to decide what facts may support an enhanced sentence, or to determine whether an enhanced sentence is warranted in any particular case, does not shield a sentencing system from the force of [the Supreme Court's] decisions" (Cunningham, 549 US at 290]; see Battles, 16 NY3d at 66-68).

Aside from relying on the discredited rationale espoused in People v Rosen and People v Rivera, we maintained in People v Quinones (12 NY3d 116 [2009]) that:

> "[u]nlike the sentencing schemes in Apprendi, Ring, Blakely, Booker and Cunningham, all of which effectively provided for judicial fact-finding of an element(s) of an offense as a prerequisite to enhancing a sentence beyond the relevant sentencing range, the New York sentencing scheme, after a defendant is deemed eligible to be sentenced as a persistent felony offender, requires that the sentencing court make a qualitative judgment about, among other things, the defendant's criminal history and the circumstances surrounding a particular offense in order to determine whether an enhanced sentence, under the statutorily prescribed sentencing range, is warranted." (Quinones, 12 NY3d at 130 [emphasis added]).

But whatever the merit of this elements-related rationale at the time we decided Quinones and, later, Battles, the Supreme Court has recently rejected it and emphasized that a jury, rather than a judge, must find any fact necessary to increase the defendant's

punishment beyond the maximum authorized by a jury verdict or guilty plea, whether or not the fact in question is deemed an essential element of the relevant offense (see Southern Union Co., 132 S Ct at 2356). Specifically, in Southern Union Co. v United States, supra, the Court rebuffed the government's argument that Apprendi barred only a judicial finding of separate wrongful acts deserving of punishment and not findings of facts that merely quantify the harm caused by the offense found by the jury, as the Court concluded that there is no "constitutionally significant difference between a fact that is an 'element' of the offense and one that is a 'sentencing factor'" (id. at 2356). Thus, taken together, Cunningham and Southern Union have demolished the two central pillars of our decisions in Battles and its predecessors.

As federal law has evolved, our Apprendi precedents have devolved into hollow and discredited words supporting a clearly unconstitutional sentencing framework. Therefore, in People v Giles, I would annul the relevant Penal Law and CPL provisions requiring the sentencing court to make fact findings about defendant's history, his character and the nature of his criminal conduct, vacate defendant's sentence and remit to Supreme Court for resentencing.

People v Sean Hawkins

No. 227

PIGOTT, J.(dissenting):

After a bench trial, defendant was found guilty of 10 counts each of sexual abuse in the second degree and sexual abuse in the third degree and one count of endangering the welfare of a child. Prior to being sentenced, defendant moved to set aside his verdict on the ground that he was denied the right to a public trial. His motion was supported by affirmations of two attorneys, who averred that they had attempted to enter the courtroom during the proceedings but observed a "Do Not Enter" sign posted on the courtroom door, and thus could not enter. One of the attorneys further alleged that he had been stopped by a court officer and told not to enter the courtroom. The People opposed the motion by way of an attorney affirmation, arguing that the courtroom was always open, and, alternatively, sought a hearing on the matter.

Criminal Court granted the motion, finding that it was "clear that the [Do Not Enter] sign was posted." It noted that "signs of this nature are routinely posted by court staff, and there is nothing to suggest otherwise. While the sign was not viewed by [the] court prior to being posted, and the language excluding officers was not dictated, authorized or approved by

- 1 -

this court, it ultimately falls upon the court to accept responsibility." The court held that it was constrained to grant the motion to set aside the verdict and ordered a new trial for defendant.

The Appellate Term, with one Justice dissenting, reversed, on the law, and reinstated the verdict (36 Misc 3d 54 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2012]). The court held that defendant's CPL 330.30 (1) motion should have been denied by Criminal Court because it "was procedurally defective as it was based on a ground which did not appear in the record" (id. at 55). The Appellate Term noted that Criminal Court "did not treat the motion as a 'de facto CPL 440.10 motion'" (id.). The court stated that defendant "should have waited until after sentencing before making an appropriate CPL 440.10 motion, in which matters may be raised which do not appear in the record" (id. at 56). The court continued: "Even if the motion had been treated as a 'de facto CPL 440.10 motion' it is not properly before this Court, since defendant did not seek leave to appeal from the denial of the motion" (id.). Thus, the court did not reach the merits of defendant's motion (id.).

Justice Weston dissented. She agreed with the majority that, since defendant's motion was based on matters outside the record, it was not proper for the court to set aside the verdict pursuant to CPL 330.30 (1) (id.). Nevertheless, in the interest of judicial economy, she would have treated the motion as one to

vacate the conviction pursuant to CPL 440.10 and granted leave to appeal from the order denying the motion (id.).  I agree with Justice Weston.

Under CPL 330.30 (1), a defendant may move to set aside the verdict on any ground that appears "in the record" that would require a reversal or modification on appeal as a matter of law. Under the statute, the motion may be made "at any time after rendition of a verdict of guilty [but] before sentence" (CPL 330.30).  I agree with the majority that because defendant's claim concerns a nonrecord matter, CPL 330.30 (1) review is not authorized (see majority op at 2).

Nonrecord matters are brought by way of a CPL 440.10 motion, which under that statute is permissible after sentencing. There is no clear statutory remedy that provides for an attack on a judgment of conviction based on nonrecord matters after verdict but prior to sentencing.  Several courts have remedied this "gap" by considering a defendant's CPL 330.30 (1) motion as one made under CPL 440.10 (a "de facto CPL 440.10 motion") "where fairness and judicial economy are not sacrificed" (People v Toland, 2 AD3d 1053, 1055-56 [3d Dept 2003]; see People v Thompson, 177 Misc 2d 803, 809 [Sup Ct Kings County 1998]; see also People v Wolf (98 NY2d 105, 119 [2002] [agreeing with the Appellate Division that defendant's application was "at best, a de facto CPL 440.10 motion"]).

In my view, the trial court did just that in this case,

although it did not expressly say so. Defendant brought to the court's attention a significant issue: defendant's right to a public trial had been violated. While a motion pursuant to CPL 440.10 would appear to be premature, the court stated that it had sufficient knowledge to decide the matter immediately. To conclude that the court could not consider the issue at that juncture, thus requiring defendant to wait to be sentenced and then raise the same issue in a post-sentence 440.10 motion, defies the concept of judicial fairness and economy.[1]

The Appellate Term was also incorrect in suggesting that defendant's appeal was not properly before it from a CPL 440.10 motion because defendant did not seek leave to appeal. Defendant prevailed at the trial level and, therefore, it would have been the People who would have sought permission to appeal.

For these reasons, I dissent.

---

[1] Indeed, based on the majority's decision today, defendant may now bring a 440.10 motion, some four years after verdict, and with an earlier decision from the trial court holding in his favor.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

<u>For Case No. 226</u>:  Order affirmed, in a memorandum.  Judges Read, Smith, Pigott and Rivera concur, Judge Smith in a separate concurring opinion in which Judges Read and Pigott concur.  Judge Abdus-Salaam dissents in part in an opinion in which Chief Judge Lippman concurs.

<u>For Case No. 227</u>:  Order affirmed, in a memorandum.  Chief Judge Lippman and Judges Read, Smith, Rivera and Abdus-Salaam concur, Judge Smith concurring in a separate opinion.  Judge Pigott dissents in an opinion.


Decided December 18, 2014