05-4375-pr; 06-3550-pr; 07-1599-pr; 07-3588-pr; 07-3949-pr
Besser v. Walsh; Phillips v. Artus; Portalatin v. Graham; Morris v. Artus;
Washington v. Poole

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

AUGUST TERM, 2007

(Argued in Tandem: April 16, 2008      Decided: March 31, 2010)

Docket Nos. 05-4375-pr, 06-3550-pr, 07-1599-pr, 07-3588-pr,
07-3949-pr
(consolidated for disposition)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JAMES BESSER, a/k/a JAMES ZERILLI,
        Petitioner-Appellant,

        v.                                        No. 05-4375-pr

JAMES WALSH, Superintendent, Sullivan Correctional Facility,
        Respondent-Appellee.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

WILLIAM PHILLIPS,
        Petitioner-Appellant,

         v.                                       No. 06-3550-pr

DALE ARTUS, Superintendent, Clinton Correctional Facility,
and ANDREW M. CUOMO, New York State Attorney General,*
        Respondents-Appellees.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CARLOS PORTALATIN,
        Petitioner-Appellee,

        v.                                        No. 07-1599-pr

HAROLD GRAHAM, Superintendent, Auburn Correctional Facility,
        Respondent-Appellant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

---

*Pursuant to Federal Rule of Appellate Procedure 43(c)(2),
Andrew M. Cuomo, New York State Attorney General, is
automatically substituted as respondent-appellee for Elliot L.
Spitzer, former New York State Attorney General.

VANCE MORRIS,
       <u>Petitioner-Appellant</u>,

               v.                    No. 07-3588-pr

DALE ARTUS, Superintendent, Clinton Correctional Facility, and ANDREW M. CUOMO, New York State Attorney General,[**]
       <u>Respondents-Appellees</u>.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

WILLIAM WASHINGTON,
       <u>Petitioner-Appellee</u>,

               v.                    No. 07-3949-pr

THOMAS POOLE, Superintendent, Five Points Correctional Facility,
       <u>Respondent-Appellant</u>.[***]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

B e f o r e:  WINTER, SACK, <u>Circuit</u> <u>Judges</u> and MURTHA, <u>District</u> <u>Judge</u>.[****]

Five New York prisoners, sentenced under New York's persistent offender statute, petitioned for a writ of habeas corpus.  We hold principally that the New York courts' upholding of the constitutionality of the New York state persistent felony offender statute after the United States Supreme Court's decision in Blakely v. Washington, 542 U.S. 296 (2004), was an unreasonable application of clearly established Sixth and

---

[**]Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Andrew M. Cuomo, New York State Attorney General, is automatically substituted as respondent-appellee for Elliot L. Spitzer, former New York State Attorney General.

[***]The Clerk of the Court is directed to amend the official caption in these cases to conform to the listing of the parties above.

[****]The Honorable J. Garvan Murtha, United States District Judge for the District of Vermont, sitting by designation.

Fourteenth Amendment law.

RICHARD M. GREENBERG, Office of the Appellate Defender, New York, New York, for Petitioner-Appellant Besser.

MARTIN M. LUCENTE, The Legal Aid Society, Criminal Appeals Bureau, New York, New York, for Petitioner-Appellant Phillips.

JOSHUA MICHAEL LEVINE (Lynne W.L. Fahey), Appellate Advocates, New York, New York, for Petitioner-Appellee Portalatin.

ANDREW C. FINE (Paul Wiener), The Legal Aid Society, Criminal Appeals Bureau, New York, New York, for Petitioner-Appellant Morris.

JONATHAN M. KIRSHBAUM (Robert S. Dean), Center For Appellate Litigation, New York, New York, for Petitioner-Appellee Washington.

MARK DWYER, Assistant District Attorney, of counsel (Robert M. Morgenthau, District Attorney, New York County; Morrie I. Kleinbart, Special Assistant District Attorney; Nicole Beder, Assistant District Attorney, of counsel), New York, New York, for Respondent-Appellee Walsh.

ROSEANN B. MACKECHNIE, Deputy Solicitor General for Criminal Matters (Andrew M. Cuomo, Attorney General of the State of New York; Barbara D. Underwood, Solicitor General; Malancha Chanda, Assistant Attorney General, of counsel), New York, New York, for Respondents-Appellees Artus and Cuomo.

LEONARD JOBLOVE, Assistant District Attorney, of counsel (Charles J. Hynes, District Attorney, Kings County; Ann Bordley, Assistant District Attorney, of counsel), Brooklyn, New York, for Respondent-Appellant Graham.

Andrew M. Cuomo, Attorney General of the State of New York (Barbara D. Underwood, Solicitor General; Roseann B. MacKechnie, Deputy Solicitor General for Criminal Matters; Malancha Chanda, Assistant Attorney General, of counsel), New York, New York, for Respondent-Appellant Poole.

Marshall A. Mintz, Mintz & Oppenheim LLP, New York, New York (Richard D. Willstatter, Chair of the Amicus Curiae Committee of the New York State Association of Criminal Defense Lawyers, Vice-Chair of the 2nd Circuit Amicus Curiae Committee of the National Association of Criminal Defense Lawyers, White Plains, New York), for Amici Curiae New York State Association of Criminal Defense Lawyers and National Association of Criminal Defense Lawyers.

WINTER, Circuit Judge:

The principal question on appeal is whether New York state court decisions affirming sentences enhanced under New York's persistent felony offender ("PFO") statute, N.Y. Penal Law § 70.10, unreasonably applied clearly established federal law. 28 U.S.C. § 2254(d).

The district court issued a writ of habeas corpus in the petitions of Carlos Portalatin and William Washington and the relevant state authorities brought this appeal.[1] See Washington v. Poole, 507 F. Supp. 2d 342, 344 (S.D.N.Y. 2007) (Koeltl, J.); Portalatin v. Graham, 478 F. Supp. 2d 385, 386 (E.D.N.Y. 2007) (Gleeson, J.). The district court declined to issue the writ in the petitions of James Besser, William Phillips, and Vance Morris, who then appealed. See Morris v. Artus, No. 06 Civ. 4095(RKS), 2007 WL 2200699, at *1 (S.D.N.Y. July 30, 2007)

4

(Sweet, J.); Phillips v. Artus, No. 05 Civ. 7974(PAC), 2006 WL 1867386, at *1 (S.D.N.Y. June 30, 2006) (Crotty, J.); Besser v. Walsh, No. 02 Civ. 6775(LAK), 2005 WL 1489141, at *1 (S.D.N.Y. June 22, 2005) (Kaplan, J.). Because these five appeals presented substantially similar or overlapping issues, we heard them together.

We hold that the Sixth Amendment right to a jury trial, applicable to the states as incorporated by the Fourteenth Amendment, prohibits the type of judicial fact-finding resulting in enhanced sentences under New York's PFO statute. We also hold that this prohibition was not clearly established until Blakely v. Washington, 542 U.S. 296 (2004). Because Besser's conviction became final before Blakely issued, the state court decisions upholding his conviction were neither contrary to nor an unreasonable application of clearly established federal law. We therefore affirm the denial of the writ as to Besser. However, because the relevant state court decisions upholding enhanced sentences for Phillips, Morris, Portalatin, and Washington were issued after Blakely, those decisions were not reasonable applications of clearly established law. Nevertheless, we remand these cases to the district court for a determination of whether the error was harmless.

BACKGROUND

a) The Persistent Felony Offender Statute

There are three increasingly harsh levels of sentencing applicable to felony offenders under Article 70 of New York's

5

penal laws pertinent to this appeal. First-time felony offenders are generally sentenced according to indeterminate ranges based on the class of offense. See N.Y. Penal Law § 70.00.[2] Second felony offenders are subject to enhanced sentences, based solely upon the finding of one qualifying prior felony conviction, again according to the class of offense. See id. § 70.06. Under the PFO statute, a defendant who has been previously convicted of two felonies is a "persistent felony offender" (sometimes "PFO"). See id. § 70.10(1)(a). PFO's may be sentenced to an indeterminate sentence in the range authorized for Class A-I felony offenders rather than the range authorized for the class of the defendant's actual offense. See id. § 70.10(2);[3] see also N.Y. Crim. Proc. Law § 400.20(1)(b). Class A-I felonies carry a minimum sentence of 15 years and a maximum of life.[4] See N.Y. Penal Law §§ 70.00(2)(a), 70.00(3)(a)(i).[5]

The difference in a defendant's sentencing exposure depends heavily upon which level's range is applicable. Once classified as a PFO, a defendant may be subject to a minimum sentence exceeding the maximum sentence for second felony offenders applicable to the crime committed. For example, a first-time offender convicted of a Class E felony would be subject to a term of 1 1/3 to 4 years. See id. § 70.00(2)-(3). Were the defendant sentenced for a Class E felony as a second felony offender, he or she would be subject to a term of 1.5 to 4 years. See id. § 70.06(3)-(4). The same defendant given the enhanced sentence

under the PFO statute would be subject to a term of 15 years to life.  See id. §§ 70.00(2)-(3), 70.10(2).

Under the provisions applicable to first and second felony offenders, the existence or non-existence of a prior felony alone determines the applicable range.  See id. §§ 70.00-70.06.  To sentence under the PFO statute, the sentencing court must make a finding of at least two prior felony convictions, rendering that defendant a PFO and exposing him or her to a Class A-I sentence.  See id. § 70.10.  After making that finding, the court turns to whether "the history and character of the defendant and the nature and circumstances of his criminal conduct" (sometimes "history/character/criminal conduct"), id. § 70.10(2); N.Y. Crim. Proc. Law § 400.20(1), is such that the PFO should, in the public interest, be given a Class A-I sentence.[6]  N.Y. Crim. Proc. Law § 400.20(1).  In making this finding, the court must conduct a hearing at which the prosecution bears the burden of proof and "[m]atters pertaining to the defendant's history and character and the nature and circumstances of his criminal conduct" must be established by a preponderance of the evidence.  Id. § 400.20(5).  "Uncontroverted allegations in the statement of the court are deemed evidence in the record."  Id. § 400.20(7).

If the sentencing court imposes a Class A-I sentence, "the reasons for the court's opinion shall be set forth in the record."  N.Y. Penal Law § 70.10(2).  The imposition of that enhanced sentence is then subject to two kinds of appellate review.  First, an appellate court has the power, in the

7

"interest[s] of justice," to reduce a Class A-I sentence within the Class A-I range, e.g., from 19 years to life to 15 years to life. See N.Y. Crim. Proc. Law § 470.20(6). Second, an imposition of a Class A-I sentence is subject to an "interest[s] of justice" review and will be "held erroneous as a matter of law, [if] the sentencing court acts arbitrarily or irrationally." People v. Rivera, 833 N.E.2d 194, 199 (N.Y. 2005). Were imposition of a Class A-I sentence under the PFO statute found by an appellate court to be "arbitrary[]" or "irrational[,]" the court must resentence the defendant or remand for resentencing to a "legally authorized lesser sentence," N.Y. Crim. Proc. Law § 470.20; see also People v. LaSalle, 734 N.E.2d 749, 750 (N.Y. 2000) (memorandum decision), usually as a second felony offender or second violent felony offender. See, e.g., People v. Williams, 658 N.Y.S.2d 264, 265 (App. Div. 1997); see also People v. Greene, 871 N.Y.S.2d 323, 325 (App. Div. 2008) (citing Williams, 658 N.Y.S.2d at 265); People v. Truesdale, 845 N.Y.S.2d 363, 364-65 (App. Div. 2007); cf. People v. Wilsey, 753 N.Y.S.2d 232, 233 (App. Div. 2003); People v. Yale, 373 N.Y.S.2d 901, 904-06 (App. Div. 1975).

Because second felony offender status usually exposes a defendant to maximum sentences below the maximum (and often the minimum) of the Class A-I range, serious constitutional issues arise, as discussed infra, and our interpretation of the PFO statute is critical to the constitutional analysis. In the briefs submitted by state authorities, it was suggested that a

8

finding of two felony convictions alone locks in the Class A-I range, with life as a maximum.  We disagree.  The history/character/criminal conduct findings, which are subject to appellate review, are necessary to lock in the Class A-I range and, if such findings do not justify a Class A-I sentence, require the sentencing court to sentence the defendant in a lesser range, usually as a second felony (or violent felony) offender.[7]

The state authorities rely for their argument upon language in Rivera.  We therefore quote the pertinent portion of that decision at length:

> [D]efendants are eligible for persistent felony offender sentencing based solely on whether they had two prior felony convictions.  Thus, . . . no further findings are required.  This conclusion takes defendant's sentence outside the scope of the violations described in Apprendi and its progeny.
>
> The [United States] Supreme Court has held that a judge (as opposed to a jury) may find the fact of a defendant's prior conviction without violating the Sixth Amendment . . . .
>
> After determining defendant's status as a persistent felony offender, the [court that sentenced Rivera] went on to consider other facts in weighing whether to impose the authorized persistent felony offender sentence. . . .  If, based on all it heard, the [sentencing] court's view of the facts surrounding defendant's history and character were different, the court might well have exercised its discretion to impose a less severe sentence.
>
> Nevertheless, the relevant question under the United States Constitution is not whether those facts were essential to the

> trial court's opinion ([N.Y. Crim. Proc. Law
> §] 400.20[1][b]), but whether there are any
> facts other than the predicate convictions
> that must be found to make recidivist
> sentencing possible (see Blakely, 542 U.S. at
> 302-303 . . .).  Our answer is no. . . .
>
>                 . . . .
>
>         To reiterate our analysis . . . , a
> defendant adjudicated as a persistent felony
> offender has a statutory right to present
> evidence that might influence the court to
> exercise its discretion to hand down a
> sentence as if no recidivism finding existed,
> while the People retain the burden to show
> that the defendant deserves the higher
> sentence.  Nevertheless, once a defendant is
> adjudged a persistent felony offender, a
> recidivism sentence cannot be held erroneous
> as a matter of law, unless the sentencing
> court acts arbitrarily or irrationally.
>
>         The court's opinion is, of course,
> subject to appellate review, as is any
> exercise of discretion.  The Appellate
> Division, in its own discretion, may conclude
> that a persistent felony offender sentence is
> too harsh or otherwise improvident. . . .  A
> determination of that kind, however, is based
> not on the law but as an exercise of the
> Appellate Division's discretion in the
> interest of justice as reserved uniquely to
> that Court ([N.Y. Crim. Proc. Law §] 470.20
> [6]).[7]
>
>         [7] See e.g., People v. Williams, 239
> A.D.2d 269, 269-270, 658 N.Y.S.2d 264 (1st
> Dept 1997) (reducing a persistent felony
> offender sentence in the interest of justice,
> based on defendant's rehabilitation) . . . .

Rivera, 833 N.E.2d at 198-99.

While Rivera states that two prior convictions alone render

a defendant "eligible for," or "subject to," a Class A-I sentence

-- or make such a sentence "possible" -- it follows the language

of the PFO statute in giving a sentencing court discretion to

10

impose such a sentence but only if the court finds that "the history and character of the defendant and the nature and circumstances of [defendant's] criminal conduct indicate that extended incarceration and life-time supervision will best serve the public interest . . . ." N.Y. Penal Law § 70.10; Rivera, 833 N.E.2d at 197-98. Rivera, therefore, confirms that, while a defendant with two or more felony convictions is, by virtue of that fact alone, "eligible for" and "subject to" a Class A-I sentence, a sentencing court may not impose a Class A-I sentence unless it has found that the history/character/criminal conduct factors justify that enhanced sentence. See Rivera, 833 N.E.2d at 198-99. As Rivera stated, these factors govern "whether to impose the authorized persistent offender sentence" or whether "to hand down a sentence as if no recidivism finding existed." Id. Further, Rivera cited as an example of the proper procedure People v. Williams, 658 N.Y.S.2d 264, a decision that found a Class A-I sentence to be "an improvident exercise of discretion" and ordered the resentencing of the defendant "as a second felony offender." Williams, 658 N.Y.S.2d at 265; see Rivera, 833 N.E.2d at 199 n.7.

Therefore, it is clear from the statute and from Rivera that, absent findings beyond the existence of two or more felony convictions, the Class A-I range may not be imposed, and a defendant must be sentenced within a lesser range, usually as a second felony offender. (Of course, the criminal history may in some cases be sufficient to support such findings.) It is also

11

clear that a Class A-I sentence usually has a statutory maximum above the statutory maximum for second felony offenders.  Compare N.Y. Penal Law §§ 70.04(3), 70.06(3), with id. § 70.00(2)(a).

The New York Court of Appeals has repeatedly rejected Sixth Amendment challenges to the sentencing scheme.  See People v. Quinones, 906 N.E.2d 1033, 1034 (N.Y. 2009); Rivera, 833 N.E.2d at 195; People v. Rosen, 752 N.E.2d 844, 846 (N.Y. 2001).  Before Blakely and Cunningham v. California, 127 S. Ct. 856 (2007), we twice held that Rosen did not unreasonably apply either Apprendi v. New Jersey, 530 U.S. 466 (2000), or the Supreme Court's later decision in Ring v. Arizona, 536 U.S. 584 (2002).  See Brown v. Miller ("Brown II"), 451 F.3d 54, 56-57 (2d Cir. 2006) (addressing both Apprendi and Ring); Brown v. Greiner ("Brown I"), 409 F.3d 523, 526 (2d Cir. 2005) (addressing Apprendi).  But, as discussed infra, neither Brown decision addresses the effect of the Supreme Court's more recent decisions in Blakely and Cunningham.

b) Prior State Court and Federal Proceedings Concerning the Petitions

1) James Besser

Besser was convicted, following a jury trial, of one count of enterprise corruption, a Class B felony, in violation of New York Penal Law § 460.20.  The jury found that he had committed three predicate criminal acts with the intent to participate in the affairs of the Colombo Organized Crime Family.

12

New York moved to have Besser sentenced as a Class A-I offender pursuant to the PFO statute. Counsel for Besser registered objections to, _inter alia_, substantial portions of the state's statement of alleged facts regarding his history and character and its supporting exhibits, which included court and police records.

The court found the predicate felony convictions qualified Besser for sentencing pursuant to the PFO statute. The judge then reviewed the evidence submitted by the state that included information relating to Besser's uncharged murder attempts and to a brutal beating for which charges were then pending. It concluded that Besser's "history and character warrant[ed] a sentence of extended incarceration and lifetime supervision . . . ." Besser received a sentence under the PFO statute of 15 years to life imprisonment. Had Besser been sentenced as a second felony offender, he would have been subject to a sentence of a minimum of 4.5 years to a maximum of 25 years. _See_ N.Y. Penal Law § 70.06(3)-(4).

Besser appealed, challenging, _inter alia_, his sentence as imposed in violation of his Sixth Amendment rights under _Apprendi_. On May 1, 2001, the New York Court of Appeals rejected that challenge, stating that because Besser had failed to raise the _Apprendi_ claim before the sentencing court, the issue was not preserved. _See_ _People v. Besser_, 749 N.E.2d 727, 733 (N.Y. 2001) (citing _Rosen_, 752 N.E.2d 844).

13

On August 26, 2002, Besser filed the present petition in the Southern District. Judge Kaplan denied the petition, based on our decision in Brown I, 409 F.3d 523, but "grant[ed] a certificate of appealability on the question whether New York's [PFO] statute violates the rule of Apprendi . . . ." See Besser v. Walsh, 2005 WL 1489141, at *1.

2) Vance Morris

Morris was convicted by a jury, of sixteen counts of first degree criminal contempt, a Class E felony. See N.Y. Penal Law § 215.51(b). The conviction was based on two telephone threats against his girlfriend in violation of four separate orders of protection issued as a result of repeated violent acts and general mayhem at his girlfriend's apartment and in her community. The state moved to sentence Morris as a Class A-I offender under the PFO statute. Morris conceded several prior felony convictions for attempted robbery, robbery, grand larceny, and possession of a controlled substance, but disputed whether his criminal conduct, history and character warranted an enhanced sentence. At the sentencing hearing on July 24, 2002, the court first determined Morris to be a PFO based on three qualifying prior felony convictions. The court then examined the evidence regarding Morris's history and character. Noting the state's evidence regarding the defendant's "relevant criminal conduct, his bad acts, uncontrollable [rage], defiance of authority and hostile conduct toward women," the court sentenced Morris to sixteen concurrent indeterminate terms of 15 years to life

14

imprisonment. Had Morris been sentenced as a second felony offender for any of these counts, he would have been subject to a minimum of 1.5 years and a maximum of 4 years. See N.Y. Penal Law § 70.06(3)-(4).

On appeal, Morris raised several issues, including, for the first time, an Apprendi challenge to his sentence. On August 4, 2005, the Appellate Division unanimously affirmed, stating that even if Morris had preserved the Apprendi challenge, it would be rejected. See People v. Morris, 800 N.Y.S.2d 6, 7 (App. Div. 2005) (citing Rivera, 833 N.E.2d 194, and Rosen,752 N.E.2d 844). On September 27, 2005, the New York Court of Appeals summarily denied Morris leave to appeal. People v. Morris, 837 N.E.2d 744 (N.Y. 2005).

Morris subsequently petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Relying on Brown I, 409 F.3d 523, and Brown II, 451 F.3d 54, as well as Rivera, 833 N.E.2d 194, Judge Sweet denied the petition. Morris v. Artus, 2007 WL 2200699, at *8-*10. Morris then brought this appeal.

3) William Phillips

Phillips was convicted by a jury of second degree robbery of a candy and newspaper store, a Class C violent felony offense at that time,[8] in violation of New York Penal Law § 160.10(1). The state moved to have Phillips sentenced as a Class A-I offender. At the sentencing hearing, Phillips did not deny his six prior felony convictions, nor did he raise any constitutional challenge to the PFO statute or his prior convictions. Phillips did,

15

however, contest whether his criminal conduct, history, and character was of the kind warranting an enhanced sentence. The court found that in light of Phillips's failure to take advantage of "favorable plea bargains, minimal sentences, early parole, a temporary release program, community service in lieu of incarceration and a drug program," he had shown "time and again, throughout his entire adult life, that he cannot be trusted to function normally in society and that he is unwilling and unable to rehabilitate himself." Phillips was sentenced to a term of 16 years to life in prison. If Phillips had not been sentenced pursuant to the PFO statute, he would have been sentenced as a second violent felony offender because of a 1987 guilty plea for attempted robbery in the second degree, a Class D violent felony offense at that time. See N.Y. Penal Law §§ 70.02(1), 70.04(1). Had he been sentenced as a second violent felony offender, he would have been subject to a determinate sentence, with a minimum of 7 years and a maximum of 15 years. See N.Y. Penal Law § 70.04(3)(b).

In a collateral proceeding brought pursuant to New York Criminal Procedure Law § 440.20, Phillips raised for the first time an Apprendi challenge to his sentence. On June 25, 2003, the court rejected his claim on the merits.

Thereafter, Phillips appealed both his conviction and the denial of his Section 440.20 motion. On December 18, 2003, the Appellate Division unanimously affirmed the underlying conviction and the denial of the Section 440.20 motion, concluding that "the

16

particular facts upon which the sentencing court based its determination were all permissible under <u>Apprendi</u> . . . ." <u>People v. Phillips</u>, 768 N.Y.S.2d 812, 812 (App. Div. 2003). The New York Court of Appeals denied Phillips leave to appeal without prejudice to renewal, and then, on September 30, 2004, denied leave again upon reconsideration. <u>People v. Phillips</u>, 816 N.E.2d 207 (N.Y. 2004), <u>on reconsideration</u>, 818 N.E.2d 680 (N.Y. 2004).

Phillips then brought the instant petition in the Southern District for a writ of habeas corpus. On June 30, 2006, Judge Crotty rejected Phillips's <u>Apprendi</u> challenge, relying on <u>Brown I</u>, 409 F.3d 523, and <u>Brown II</u>, 451 F.3d 54. <u>Phillips v. Artus</u>, 2006 WL 1867386, at *5-*7. The court declined to issue a certificate of appealability. <u>Id.</u> at *7. Phillips then moved for a certificate of appealability in this court, which was granted.[9]

4) Carlos Portalatin

Portalatin was found guilty by a jury of one count each of second degree kidnapping and first degree robbery in connection with a carjacking incident. <u>See</u> N.Y. Penal Law §§ 135.20, 160.15. Both of these offenses are Class B violent felony offenses. <u>See</u> N.Y. Penal Law § 70.02(1). The state moved to sentence Portalatin as a Class A-I. At the sentencing hearing on April 28, 2003, the trial court adjudicated Portalatin a PFO, citing two prior convictions. Portalatin contended that his criminal conduct, history, and character were not of the kind to warrant an enhanced sentence. As to his history and character,

17

the court noted that "looking back on the history of this defendant, and having read these reports, it is clear that there is very little in his experience or his life that would support the story he gave on the witness stand . . . ." In light of Portalatin's repeated parole revocations, disinclination to accept drug treatment, repeated drug charges, "inclination to prey upon others," his inability to "control his own problems," the fact that a carjacking is a "truly terrifying experience," and his displaying what appeared to be a firearm during the crime, the court imposed two concurrent terms of 18 years to life imprisonment. If Portalatin had not been sentenced as a PFO, he would have been sentenced as a second violent felony offender due to a previous conviction in 1995 for attempted burglary in the second degree, a Class D violent felony offense. See N.Y. Penal Law §§ 70.02(1), 70.04(1). As a second violent felony offender, Portalatin would have been subject to a determinate sentence for each count that was between 10 to 25 years. See N.Y. Penal Law § 70.04(3)(a).

Portalatin brought an Apprendi challenge to his sentencing under the PFO statute for the first time in his appeal to the Appellate Division. Finding Portalatin's Apprendi challenge both unpreserved and without merit, the court affirmed his judgment of conviction and sentence on May 16, 2005. People v. Portalatin, 795 N.Y.S.2d 334, 335 (App. Div. 2005) (citing Rosen, 752 N.E.2d 844). On July 6, 2005, Portalatin's application for leave to

18

appeal was denied by the New York Court of Appeals. People v. Portalatin, 5 N.Y.3d 793, 793 (2005).

Portalatin then sought a writ of habeas corpus in the Eastern District, which Judge Gleeson granted on March 22, 2007. Portalatin v. Graham, 478 F. Supp. 2d at 386. The state then took this appeal.

5) William Washington

Washington was convicted by a jury of fourth degree grand larceny, a Class E felony, in connection with his theft of a wallet at a bus terminal. See N.Y. Penal Law § 155.30. The state moved to sentence Washington pursuant to the PFO statute. Washington's memorandum in opposition raised constitutional objections to the PFO statute based on Apprendi, Ring, and Harris v. United States, 536 U.S. 545 (2002). At the PFO hearing on January 23, 2003, Washington conceded two prior felony convictions. He also reasserted his Apprendi argument and contested whether his criminal conduct, history and background were of the kind to warrant an enhanced sentence. At the sentencing hearing on January 30, 2003, the court concluded that the two unchallenged prior felony convictions triggered the PFO statute. With respect to Washington's criminal conduct, history, and character, the court noted some fifty-seven arrests outside of New York and fifteen theft-related misdemeanor and felony convictions in New York, the defendant's extensive pattern of thefts in the same locale, and a history of recidivism placing him "far beyond any rehabilitation." The court then sentenced

19

Washington to a term of 20 years to life imprisonment.  Had Washington been sentenced as a second felony offender, he would have been subject to an indeterminate sentence of a minimum of 1.5 years and a maximum of 4 years.  See N.Y. Penal Law § 70.06(3)-(4).

On August 4, 2005, the Appellate Division upheld the constitutionality of the PFO sentencing scheme and affirmed Washington's adjudication as a persistent felony offender.  See People v. Washington, 799 N.Y.S.2d 217, 218 (App. Div. 2005) (citing Rivera, 833 N.E.2d 194; Rosen, 752 N.E.2d 844).  The court nonetheless exercised its discretion to reduce the sentence in the interest of justice to a Class A-I sentence of 15 years to life.  See id. at 217-18; see also N.Y. Penal Law § 70.00(2)-(3).  Thereafter, the New York Court of Appeals denied leave to appeal, People v. Washington, 5 N.Y.3d 834 (2005), and on January 9, 2006, the United States Supreme Court denied Washington's petition for certiorari.  Washington v. New York, 546 U.S. 1104 (2006).  Washington then petitioned in the Southern District for a writ of habeas corpus, which Judge Koeltl granted on August 28, 2007.  See Washington v. Poole, 507 F. Supp. 2d 342, 344 (S.D.N.Y. 2007).  The state then brought this appeal.

DISCUSSION

a) Standard of Review

We review de novo a decision to grant or deny a petition for writ of habeas corpus.  Morris v. Reynolds, 264 F.3d 38, 45 (2d Cir. 2001).  Under the Antiterrorism and Effective Death Penalty

20

Act ("AEDPA"), "with respect to any claim that was adjudicated on the merits in State court proceedings," a federal court may not grant habeas relief unless the state court's resolution of the claim on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established law for AEDPA purposes only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., for the Court). An "unreasonable application" of clearly established federal law occurs "if [a] state court 'correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case,' or refuses to extend a legal principle that the Supreme Court has clearly established to a new situation in which it should govern." Hoi Man Yung v. Walker, 468 F.3d 169, 176 (2d Cir. 2006) (quoting Williams, 529 U.S. at 407-08) (citations omitted). The proper inquiry is not whether a state court's application of,

21

or refusal to extend, the governing law was erroneous, but whether it was "objectively unreasonable," Williams, 529 U.S. at 409-10, "mean[ing] that petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief." Cotto v. Herbert, 331 F.3d 217, 248 (2d Cir. 2003) (internal quotation marks omitted).

Clearly established federal law "refers to the holdings, as opposed to the dicta, of [Supreme Court] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. To assess "clearly established" law, federal habeas courts apply rules of retroactivity that are generally consistent with those set forth in Teague v. Lane, 489 U.S. 288 (1989). See Mungo v. Duncan, 393 F.3d 327, 333-34 (2d Cir. 2004). Teague prohibits the retroactive application of "new" legal rules on collateral review. Teague, 489 U.S. at 295-96; see also id. at 301 (O'Connor, J., concurring). Under Teague, "a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final." Id. at 301. AEDPA similarly forbids retroactive application of "new" legal rules. See McKinney v. Artuz, 326 F.3d 87, 96 (2d Cir. 2003) ("Clearly established federal law . . . is law that is 'dictated by [Supreme Court] precedent existing at the time the defendant's conviction became final.'") (quoting Williams, 529 U.S. at 381 (Stevens, J., concurring)). However, as explained infra, the point of reference for determining "clearly

22

established law" may differ from the reference point used under Teague to determine whether a legal rule is "new."

AEDPA deference applies only if a state court has disposed of a federal claim "on the merits" and "reduce[d] its disposition to judgment." See Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001). In the present matter, petitioners' federal claims were all disposed "on the merits" by the New York courts. Phillips's federal claim was rejected "on the merits" by the state court's conclusion that "the particular facts upon which the sentencing court based its determination were all permissible under Apprendi . . . ." People v. Phillips, 768 N.Y.S.2d at 812. The state court similarly rejected Washington's claim "on the merits" by concluding that "[t]he procedure under which defendant was adjudicated a persistent felony offender is not unconstitutional." People v. Washington, 799 N.Y.S.2d at 218.

The federal claims raised by Portalatin, Morris, and Besser were also decided "on the merits" for AEDPA purposes because each state court cited People v. Rosen in ruling that those claims were procedurally barred. See People v. Besser, 749 N.E.2d at 733; People v. Morris, 800 N.Y.S.2d at 7; People v. Portalatin, 795 N.Y.S.2d at 335. We held in Brown I that the state court in People v. Rosen could not have invoked state procedural law and barred Rosen's Sixth Amendment claim without first having found that the claim was without merit. Brown I, 409 F.3d at 532. And we later held in Brown II that a citation to Rosen in holding that a claim is procedurally barred establishes that the state

23

court decision was interwoven with federal law. Brown II, 451 F.3d at 56-57. Therefore, the procedural rulings in the present matter are not "adequate" and "independent" grounds for the decision and do not bar us from addressing the federal claims on habeas review. See Brown II, 451 F.3d at 56-57; Brown I, 409 F.3d at 532. We thus proceed with these appeals under AEDPA's deferential standard of review.

b) AEDPA Claim and "Clearly Established" Sixth Amendment Law

Our analysis will proceed as follows: we first address whether it was objectively unreasonable to uphold petitioners' Class A-I sentences in light of the Supreme Court decisions applying Apprendi. We then turn to whether that law was "clearly established" at the relevant time for each petitioner. This inquiry leads to two further questions: first, to what period of time do we look in determining whether a legal rule was "clearly established" under AEDPA; second, to what extent does AEDPA allow us to consider Supreme Court cases that postdate the relevant period selected.

1) The Apprendi Rule

The Sixth and Fourteenth Amendments guarantee that in federal and state "criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . ." U.S. Const. amend. VI; Duncan v. Louisiana, 391 U.S. 145, 149 (1968) (holding that the Fourteenth Amendment affords defendants the right to a jury trial in state prosecutions to the same extent the Sixth Amendment affords this right in federal

24

prosecutions). The Supreme Court has concluded that this guarantee requires that a jury, not a judge, find any facts (other than the fact of a prior conviction(s)) that may increase the penalty for a crime beyond the ordinary statutory maximum. Apprendi v. New Jersey, 530 U.S. 466, 490 (2000).

In Apprendi, the petitioner was convicted of possession of a firearm for an unlawful purpose, punishable under New Jersey law by a term of incarceration of 5 to 10 years. Id. at 468. A separate hate crime statute, however, authorized an "extended term" of imprisonment of 10 to 20 years if the trial judge found that "[t]he defendant in committing the crime acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity." Id. at 468-69 (quoting N.J. Stat. Ann. § 2C:44-3(e)) (alteration in original). Having made such a finding, the trial judge sentenced Apprendi to 12 years imprisonment. Id. at 471. The Supreme Court held that the enhanced sentence violated the Sixth Amendment, id. at 497, concluding that other than the fact of a prior conviction, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt," id. at 490. The Court emphasized that "the relevant inquiry is one not of form, but of effect." Id. at 494.

On several subsequent occasions, the Supreme Court elaborated on the reach of Apprendi. In Ring, the Supreme Court addressed a capital sentencing scheme that required sentencing

25

judges to find at least one statutorily-enumerated aggravating circumstance before imposing the death penalty. See Ring, 536 U.S. at 592-93. Absent such a finding and "[b]ased solely on the jury's verdict finding . . . [of guilt], the maximum punishment [Ring] could have received was life imprisonment." Id. at 597 (citing Ariz. Rev. Stat. § 13-703). Ring concluded that this scheme ran afoul of Apprendi, id. at 609, explaining that "[i]f a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact -- no matter how the State labels it -- must be found by a jury beyond a reasonable doubt," id. at 602.

Then came Blakely. Under Washington state's Sentencing Reform Act, judges were ordinarily required to impose a sentence within a "standard range" that might well be significantly below the statutory maximum for the underlying offense. See Blakely, 542 U.S. at 299. The charged offense in Blakely's case, second degree kidnapping, was a class of felony subject to a maximum sentence of 10 years. Id. (citing Wash. Rev. Code §§ 9A.20.021(1)(b), 9A.40.030(3)). Other provisions, however, further limited the range for a defendant in Blakely's circumstances to a "standard" sentencing range of 49 to 53 months. Id. And yet another provision permitted the sentencing court to impose a sentence above that "standard" range if it made factual findings on the record sufficient to support a conclusion that there were "substantial and compelling reasons justifying an exceptional sentence," based on a non-exhaustive list of

26

aggravating factors.  Id. (quoting Wash. Rev. Code § 9.94A.120(2)).  The sentencing judge found that, in kidnapping his ex-wife, Blakely had acted with deliberate cruelty and accordingly sentenced him above the standard range to a term of incarceration of 90 months.  Id. at 300.

The Supreme Court stated that review of Blakely's sentence required "apply[ing] the rule we expressed in Apprendi v. New Jersey: 'Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'"  Blakely, 542 U.S. at 301 (quoting Apprendi, 530 U.S. at 490) (citation omitted).  The Court then reiterated that "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."  Id. at 303 (emphasis in original).  Thus, for purposes of Apprendi, the statutory maximum for Blakely was not the 10 years prescribed for the class of felony, but the top of the standard range, 53 months, the applicable maximum absent additional fact-finding.  See id. at 303-04.  Because a judge had to find facts in order to impose a sentence beyond the 53 month-range, the Court concluded that Washington's sentence violated the Sixth Amendment.  See id. at 313-14.

In so holding, Blakely rejected the argument that the Apprendi rule did not apply because Washington's sentencing laws did not require the finding of any specific fact or facts, but

27

rather required application of the amorphous test of "substantial and compelling reasons," id. at 299, as a prerequisite for the imposition of a sentence enhanced beyond the standard range. See id. at 305. The Court explained that it was irrelevant "[w]hether the judge's authority to impose an enhanced sentence depends on finding a specified fact (as in Apprendi), one of several specified facts (as in Ring), or any aggravating fact (as [in Blakely])) . . . ." Id. It also rejected as irrelevant the fact that a sentencing court, after finding aggravating facts, was required to assess the appropriateness of an enhanced sentence. See id. at 305 n.8 ("Whether the judicially determined facts require a sentence enhancement or merely allow it, the verdict alone does not authorize the sentence." (emphasis omitted)). Because the judge-made "deliberate cruelty" finding resulted in Blakely being sentenced beyond 53 months, the Court reversed the state court's decision that there was no Apprendi violation and remanded for further proceedings. Id. at 298, 303, 314.

Blakely clarified Apprendi by making it unambiguously clear that any fact (other than a prior conviction), no matter how generalized or amorphous, that increases a sentence for a specific crime beyond the statutory maximum must be found by a jury. Before Blakely, a court could reasonably have concluded (as was argued in Blakely) that certain kinds of judicial fact-finding did not violate Apprendi even if it resulted in a sentence beyond a statutory maximum. Indeed, we so held in Brown

II, 451 F.3d at 55, and Brown I, 409 F.3d at 526. Of course, those decisions involved the reasonableness of New York court decisions upholding the PFO statute before Blakely and do not answer the question before us with regard to four of the petitioners, as discussed infra. See Brown II, 451 F.3d at 59 n.3; Brown I, 409 F.3d at 533 & n.3.

In Brown I, we concluded that it was not unreasonable to read Apprendi to proscribe only those sentencing schemes that permit a court to find some statutorily-enumerated, specific fact(s) to impose an enhanced sentence. Brown I, 409 F.3d at 534-35. Brown II reconsidered that holding in light of Ring and concluded that Ring had not undermined Brown I. Brown II, 451 F.3d at 55. We held that, even after Ring, it was not unreasonable "to conclude that [] determinations regarding the defendant's history, character, and offense fall into a different category from the essential statutory elements of heightened sentencing, or functional equivalents thereof, that were addressed by the Supreme Court's Apprendi ruling." Id. at 58 (quoting Brown I, 409 F.3d at 535). In other words, because the "'amorphous' determination" required by the statute did not require "judicial factfinding of an element of the crime," it did not violate Apprendi. Id. at 59. However, while Brown I and Brown II remain good law as to the issue they addressed -- whether upholding the PFO statute was an unreasonable application of clearly established federal law after Apprendi but before Blakely/Cunningham -- Blakely makes it clear that even

29

"amorphous" judicial findings that alter maximum sentences offend the Sixth Amendment.

Cunningham v. California, 127 S. Ct. 856 (2007), also requires discussion because the challenged sentencing regime, California's determinate sentencing law ("DSL"), bears a remarkable similarity to both the sentencing scheme in Blakely and the New York PFO statute. Under the DSL, substantive offenses were assigned upper, middle, and lower range maximum sentences. Id. at 861. In Cunningham's case, the lower range was 6 years, the middle range was 12 years, and the upper range was 16 years. Id. at 860. Sentencing judges were required to impose the middle range unless there were "circumstances in aggravation or mitigation of the crime." Id. at 861 (quoting Cal. Penal Code § 1170(b)). "Circumstances in aggravation," were defined as "facts which justify the imposition of the upper prison term." Id. at 862 (quoting Cal. Jud. Council Rule 4.405(d)) (emphasis omitted). Such facts were to be "established by a preponderance of the evidence," and "stated orally on the record." Id. (quoting Cal. Jud. Council Rule 4.420(b), (e)).

The Supreme Court held in Cunningham that "[b]ecause circumstances in aggravation are found by the judge, not the jury, and need only be established by a preponderance of the evidence, not beyond a reasonable doubt, the DSL violates Apprendi's bright-line rule." Id. at 868 (citations omitted). In reaching this conclusion, the Court rejected the contention that the upper range was the relevant statutory maximum for

30

*Apprendi* purposes and that judges were simply exercising the traditional discretion common to sentencing. *Id.* It reiterated that "[i]f the jury's verdict alone does not authorize the sentence, if, instead, the judge must find an additional fact to impose the longer term, the Sixth Amendment requirement is not satisfied." *Id.* at 869.

*Cunningham* also rejected an attempt to compare California's mandatory sentencing scheme and the post-*Booker* Federal Sentencing Guidelines, *id.* at 869-70, which had been rendered advisory by the Court, *see United States v. Booker*, 543 U.S. 220, 246 (2005) (Breyer, *J.*, for the Court). That the sentencing schemes of both California and the United States required that resultant sentences be reasonable did not, in the Court's view, cure the California scheme's constitutional infirmity in requiring judges to find facts to impose the increase in a sentence beyond the maximum sentence prescribed by the middle range. *See Cunningham*, 127 S. Ct. at 870.

2) Was *Blakely* "clearly established" at the relevant time for each petitioner?

As noted, the legal rule invoked by petitioners was not clearly established until *Blakely* clarified *Apprendi*. Therefore, we must decide whether *Blakely* was clearly established federal law "as of the time of the relevant state-court decision" for each petitioner. *Williams*, 529 U.S. at 412 (O'Connor, *J.*, for the Court). If *Blakely* postdates the "relevant time" for any petitioner, then our *Brown* cases would control and foreclose the

31

current challenge.  See Brown II, 409 F.3d at 535; Brown I, 451 F.3d at 59.

For all but one petitioner, it does not matter which formula we use in assessing the "relevant time."  Besser's conviction became final well before Blakely, and our Brown decisions dispose of his claim for habeas relief.  Similarly, because the state court decisions involving Portalatin, Morris and Washington all postdate Blakely, their claims are not controlled by the Brown decisions, and we must instead evaluate New York's sentencing law in light of Blakely.  However, Blakely came down after the New York Appellate Division decided Phillips' appeal but before the Court of Appeals of New York denied Phillips leave to appeal. Phillips' appeal thus turns on which approach we adopt in determining the relevant time.

We have previously noted that the Supreme Court has offered "inconsistent guidance" on this question.  See Brown II, 451 F.3d at 57 n.1; Brown I, 409 F.3d at 533 n.3.[10]  However, as the Court recently explained, "the relevant state-court judgment for purposes of our review under AEDPA is that adjudicating the merits of [petitioner's] state habeas application, in which these claims were properly raised . . . ."  Abdul-Kabir v. Quarterman, 127 S. Ct. 1654, 1659 (2007).

We understand this formulation to mean that any state court decision involving the merits of an Apprendi claim is an application of federal law, whether or not the decision contains a discussion.  Even if such a decision is a denial of leave to

32

appeal or denial of a motion for reconsideration, application of federal law is still a factor that we must deem a state court to have considered. Therefore, we understand the relevant time to be the date on which a decision regarded as final under state law -- which may or may not include the certiorari period (not an issue here) -- has been entered in a proceeding deemed to involve the merits for federal habeas purposes. We believe that rule is not only fully consistent with Section 2254(d), which triggers AEDPA review once a claim has been "adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d), but also provides a bright-line rule.

Applying this formulation here, Phillips may rely on Blakely as clearly established while the state courts were actively reviewing his claims. Thus, Blakely is clearly established law for purposes of the petitions filed by Portalatin, Morris, Washington, and Phillips.

3) <u>Cunningham</u> and "Clearly Established" Law

We turn to a final issue related to the term "clearly established federal law." As noted, <u>Cunningham</u> invalidated a statutory scheme very similar to the PFO statute. The state argues that we may not consider <u>Cunningham</u> because it postdates the relevant state court decisions for the remaining petitioners. We disagree. Under both AEDPA and <u>Teague</u>, a petitioner may rely on a decision issued subsequent to the relevant period if that decision is "dictated" by preexisting Supreme Court precedent. See <u>Artuz</u>, 326 F.3d at 96; see also <u>Williams</u>, 529 U.S. at 381

33

(Stevens, J., concurring) (quoting Teague, 489 U.S. at 301); id. at 412 (O'Connor, J., for the Court). By "dictated," we mean that the result must have been "apparent to all reasonable jurists" during the operative time frame. See Beard v. Banks, 542 U.S. 406, 413 (2004) (quoting Lambrix v. Singletary, 520 U.S. 518, 528 (1997)). Accordingly, neither Teague nor AEDPA preclude us from considering post-dated decisions that merely restate or codify "old" rules of law that were "clearly established" at the time.

Applying that principle here, we conclude that Blakely compelled the result in Cunningham and that we must therefore consider it as "clearly established law" for AEDPA purposes. Cunningham presented no issue of fact or law materially distinguishable from Blakely because the sentencing schemes in Blakely and Cunningham were "closely analogous." See Butler v. Curry, 528 F.3d 624, 635-36 (9th Cir. 2008). Both schemes required a judge to impose a sentence within a standard range absent a finding of circumstances (other than those taken into account in the conviction) justifying an enhanced sentence. See Cunningham, 127 S. Ct. at 861-62; Blakely, 542 U.S. at 304. And we agree with the Ninth Circuit that Cunningham, in rejecting California's scheme, merely "reiterated the[] same points, rejecting arguments already disapproved in Blakely. . . . [It] did not add '"any new elements or criteria for"' determining when a state statute violates the Sixth Amendment." Butler, 528 F.3d at 636 (citation omitted).

34

To be sure, the statutory scheme in <u>Blakely</u> is not precisely identical to the scheme in <u>Cunningham</u>. But a decision does not announce a "new" legal rule simply because it applies "a well-established constitutional principle to govern a case which is closely analogous to those which have been previously considered in the prior case law." <u>Penry v. Lynaugh</u>, 492 U.S. 302, 314 (1989) (quoting <u>Mackey v. United States</u>, 401 U.S. 667, 695 (1971) (Harlan, <u>J.</u>, concurring in part and dissenting in part)), <u>abrogated on other grounds by</u> <u>Atkins v. Virginia</u>, 536 U.S. 304, 307, 321 (2002). Holding otherwise would render any application of <u>Blakely</u> a "new" rule and thus not "clearly established law" for AEDPA purposes. See <u>Butler</u>, 528 F.3d at 638-39; <u>see also</u> <u>Duncan v. United States</u>, 552 F.3d 442, 445 (6th Cir. 2009) ("[T]he <u>Apprendi</u> line of cases is long. Logically, at some point in this chain . . . the rule <u>Apprendi</u> announced must stop being a new rule in every varying application and instead must become an old one that applies on collateral review.").

Because <u>Cunningham</u> presented no issue of law or fact materially distinguishable from <u>Blakely</u>, we conclude that <u>Blakely</u> dictated the result in <u>Cunningham</u>. Indeed, the Court's opinion in <u>Cunningham</u> suggests as much. See <u>Cunningham</u>, 127 S. Ct. at 868 ("[T]hat should be the end of the matter . . . ." (quoting <u>Blakely</u>, 542 U.S. at 313)). As such, we may consider it in determining whether the state courts here unreasonably applied clearly established federal law.

35

c) AEDPA and "Contrary to," or "Unreasonable Application" of "Clearly Established Law"

In rejecting the Sixth Amendment challenges of Phillips, Portalatin, Morris and Washington to the PFO statute, New York courts relied on the views expressed by the Court of Appeals in a series of opinions. We now turn to whether, in view of Blakely and Cunningham, those decisions are "contrary to" or an "unreasonable application of" clearly established Sixth Amendment law.

The New York Court of Appeals has considered Apprendi arguments with regard to the PFO statute on at least three occasions and each time has concluded that the scheme is constitutional. See Quinones, 906 N.E.2d 1033; Rivera, 833 N.E.2d 194; Rosen, 752 N.E.2d 844. Rivera, decided after Blakely and Booker, elaborates on Rosen and offers the most thorough interpretation and analysis of the PFO statute. The court's more recent decision in Quinones merely reiterates and confirms the logic of Rosen and Rivera. Compare Quinones, 906 N.E.2d at 1036-42, with Rivera, 833 N.E.2d at 197-201, and Rosen, 752 N.E.2d at 846-47.

In upholding the PFO statute, Rivera emphasized that the history/character/criminal conduct findings are of the sort that have always guided the exercise of discretion in sentencing, Rivera, 833 N.E.2d at 199-200, and that "fall[] squarely within the most traditional discretionary sentencing role of the judge." Id. at 200. By way of footnote, Rivera noted:

36

> . . . Our statutes contemplate that the sentencing court–after it has adjudicated the defendant a persistent felony offender–will consider holistically the defendant's entire circumstances and character, including traits touching upon the need for deterrence, retribution and rehabilitation unrelated to the crime of conviction. This is different from the type of factfinding involved in Apprendi. In this respect, we note that in Brown v. Greiner, 409 F.3d 523, 534 [(2d Cir. 2005)], the United States Court of Appeals for the Second Circuit described the contested second phase of our sentencing procedure as "a vague, amorphous assessment" of whether the public interest would be served through imposition of the recidivist sentence.

Id. at 200 n.8. The Court of Appeals also analogized the history/character/criminal conduct findings to the federal Guidelines provision in Section 3553(a). See id. at 199. Finally, it concluded, "[o]nce the defendant is adjudicated a persistent felony offender, the requirement that the sentencing justice reach an opinion as to the defendant's history and character is merely another way of saying that the court should exercise its discretion." Id. at 201.

To reiterate our earlier discussion of New York's sentencing scheme: first felony offenders are generally subject to a low minimum and a maximum that varies greatly depending on the crime, see N.Y. Penal Law § 70.00; second felony offenders are generally subject to a higher minimum and a maximum that is the same as that for first felony offenders, see N.Y. Penal Law § 70.06; a defendant with two felony convictions is a PFO subject to a Class A-I maximum of life but may be sentenced within a lower range,

37

usually as a second felony offender or second violent felony offender, if the prosecution fails to show that the history/character/criminal conduct factors justify a Class A-I sentence, see N.Y. Penal Law § 70.10; N.Y. Crim. Proc. Law § 470.20.  We believe that upholding this scheme was an unreasonable application of Blakely/Cunningham.  There is no material difference between the PFO statute and the schemes that the Supreme Court found objectionable in Blakely/Cunningham.

Under both the Washington law at issue in Blakely and the California law challenged in Cunningham, the convicted defendant was "eligible for" or "subject to" a sentencing range with a high maximum.[11]  See Cunningham, 127 S. Ct. at 861-62; Blakely, 542 U.S. at 299.  However, before a sentencing court could exercise its discretion to impose a sentence in the range with the high maximum, it had to conclude that some aggravating or compelling circumstance justified it.  See Cunningham, 127 S. Ct. at 861 (allowing for an enhanced sentence upon the finding of "circumstances in aggravation"); Blakely, 542 U.S. at 299 (allowing for enhanced sentencing upon a finding of "substantial and compelling reasons").  In the absence of such findings, these sentencing courts lacked any discretion to sentence above the standard range that had a lower maximum.  See Cunningham, 127 S. Ct. at 862; Blakely, 542 U.S. at 304.  Additionally, under both schemes, a decision to sentence above the standard range was reviewable for evidentiary sufficiency.  See Cunningham, 127 S. Ct. at 861 n.2; Blakely, 542 U.S. at 299-300, 304.

New York's scheme is virtually indistinguishable in these respects.  The law allows higher-tier, Class A-I sentencing when the sentencing judge has made factual findings related to a defendant's criminal history, character, and nature of the criminal conduct that justify the higher sentencing range.  See N.Y. Penal Law § 70.10(2); N.Y. Crim. Proc. Law § 400.20(1); Rivera, 833 N.E.2d at 197 n.3 ("The law goes on to require a hearing or hearings, at which the People must prove to the court, beyond a reasonable doubt, the fact of defendant's prior convictions, and either party may offer evidence (subject to a preponderance-of-the-evidence standard) bearing on the court's exercise of discretion as to whether a recidivist sentence is warranted." (citation omitted)).  To be sure, the quantity and quality of the prior offenses alone may suffice to show facts justifying a Class A-I sentence.  See Rivera, 833 N.E.2d at 201 ("If, for example, a defendant had an especially long and disturbing history of criminal convictions, a persistent felony offender sentence might well be within the trial justice's discretion even with no further factual findings.").  Absent such fact-finding, a judge lacks discretion to select the Class A-I sentence and must provide a sentence authorized by the other provisions of Article 70, such as a second felony offender sentence.  See N.Y. Penal Law § 70.10(2); N.Y. Crim. Proc. Law § 400.20(1); Rivera, 833 N.E.2d at 198 ("Criminal Procedure Law § 400.20(1) provides that a defendant may not be sentenced as a persistent felony offender until the court has made the requisite

39

judgment as to the defendant's character and the criminality."). Moreover, as in _Blakely_, an enhanced sentence under New York law is subject to a standard of appellate review focused on the judge's role as fact-finder in imposing the enhanced sentence. _See_ _Blakely_, 542 U.S. at 299-300; _Rivera_, 833 N.E.2d at 199 ("[O]nce a defendant is adjudged a persistent felony offender, a recidivism sentence cannot be held erroneous as a matter of law, unless the sentencing court acts arbitrarily or irrationally."); _People v. Jennings_, 822 N.Y.S.2d 501, 502 (App. Div. 2006) ("The adjudication of defendant as a persistent felony offender was not an abuse of discretion."). We thus see no material difference between the elements of the PFO statute and the elements of the sentencing schemes found objectionable in _Blakely_ and _Cunningham_.

For the reader's benefit, we include a chart comparing the sentences that Blakely and Cunningham were subject to, _see generally_ _Cunningham_, 237 S. Ct. at 861; _Blakely_, 542 U.S. at 299, with the sentences petitioner Morris was subject to under the New York scheme.

40

|  | "Lesser" Sentence | Requisite Judicial Fact-Finding to Enhance Sentence | "Enhanced" or "Upper Tier" Sentence |
|---|---|---|---|
| Washington Sentencing Law<br><br>(Blakely)<br><br>second-degree kidnapping with a firearm | "Standard" term of 49 to 53 months<br><br>Wash. Rev. Code §§ 9.94A.310, 9.94A.320 | "substantial and compelling reasons justifying an exceptional sentence"<br><br>Wash. Rev. Code § 9.94A.120(2) | 10-year Maximum Sentence<br><br>Wash. Rev. Code § 9A.20.021(1)(b) |
| California DSL<br><br>(Cunningham)<br><br>continuous sexual abuse of a child under 14 | "Middle" term of 12 years<br><br>Cal. Penal Code § 288.5(a) | "the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime"<br><br>Cal. Penal Code § 1170(b) | 16-year Maximum Sentence<br><br>Cal. Penal Code § 288.5(a) |
| New York's Sentencing Scheme<br><br>(Morris)<br><br>Class E felony conviction | Second Felony Offender Sentence –<br><br>indeterminate term of 1.5 to 4 years<br><br>N.Y. Penal Law § 70.06(3)-(4) | Two qualifying prior felony convictions<br><br>**AND**<br><br>"the court . . . is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and life-time supervision will best serve the public interest"<br><br>N.Y. Penal Law § 70.10 | Indeterminate term of 15 years to life<br><br>N.Y. Penal Law §§ 70.00(2)-(3), 70.10(2) |

In addition, the statutory labels "history and character" and "nature and circumstances of [the] criminal conduct" can no longer (after Blakely/Cunningham) reasonably be described as the kind of judicial fact-finding constitutionally permissible, see Almendarez-Torres v. United States, 523 U.S. 224, 226-27 (1998), because they are amorphous and do not involve hard facts. The Blakely standard determined to be a jury question was only "substantial and compelling reasons," see Blakely, 542 U.S. at 299, while the corresponding test in Cunningham was "circumstances in aggravation," see Cunningham, 127 S. Ct. at 861. If anything, the PFO statute's history/character/criminal conduct standard is less amorphous than those. Finally, Cunningham rejected the attempted analogy to the federal guidelines. See id. at 869-71.

To sum up, the PFO statute cannot be squared with the statement by Justice Ginsburg in her opinion for the Court in Cunningham: "If the jury's verdict alone does not authorize the sentence, if, instead, the judge must find an additional fact to impose the longer term, the Sixth Amendment requirement is not satisfied." Id. at 869.

d) Harmless Error

However, it is not enough to conclude that New York state courts have unreasonably applied the Sixth Amendment to Phillips, Washington, Morris, and Portalatin. The state also contends that any constitutional error in their sentencing was harmless. In light of our conclusion that the state court decisions affirming

42

Besser's sentence were not unreasonable applications of clearly established law, we need not discuss this issue with respect to him.

Many constitutional errors are not such as to "necessarily render[] a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." Washington v. Recuenco, 548 U.S. 212, 218-19 (2006) (quoting Neder v. United States, 527 U.S. 1, 9 (1999)). So long as the "defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other [constitutional] errors that may have occurred are subject to harmless-error analysis." Id. at 218 (quoting Neder, 527 U.S. at 8) (alteration in original). Accordingly, the Supreme Court has held that a state court's failure to submit a sentencing factor to the jury, a Sixth Amendment violation under Blakely, is not structural error and is subject to harmless error analysis. Id. at 221-22.

In deciding whether the application of the unconstitutional statute to each petitioner was harmless, we must apply the Brecht v. Abrahamson, 507 U.S. 619 (1993), test and ask if the error "had substantial and injurious effect or influence" on the sentence. Id. at 631 (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)); see also Fry v. Pliler, 127 S. Ct. 2321, 2328 (2007) (holding that a federal habeas "court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the substantial and injurious effect standard . . . , whether or not the state appellate court

43

recognized the error . . .") (internal quotation marks omitted); Recuenco, 548 U.S. at 221-22; Calderon v. Coleman, 525 U.S. 141, 145-47 (1998) (per curiam) (holding that for habeas relief to be granted based on constitutional error in the capital penalty phase, the error must have had substantial and injurious effect on the jury's verdict in the penalty phase); Brinson v. Walker, 547 F.3d 387, 395 (2d Cir. 2008); Butler, 528 F.3d at 648.

The State bears the burden of persuasion in such cases, Fry, 127 S. Ct. at 2327 n.3; United States v. Dominquez Benitez, 542 U.S. 74, 81 n.7 (2004), and "in cases of grave doubt as to harmlessness the petitioner must win," O'Neal v. McAninch, 513 U.S. 432, 437 (1995). Grave doubt exists when, "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." Id. at 435.

In the present case, we believe it prudent to remand for further proceedings on the question of harmlessness. No district court made a detailed analysis of the harmless error issue with respect to the sentences for the four petitioners, and we do not believe the record on appeal is sufficiently developed for us to address the matter accurately in the first instance. We therefore remand the remaining four petitions for proceedings consistent with this opinion.

CONCLUSION

We have considered the parties' remaining claims and find them to be without merit. For the foregoing reasons, we affirm

44

the district court's order in <u>Besser</u>.  We vacate and remand in <u>Portalatin</u>, <u>Washington</u>, <u>Morris</u>, and <u>Phillips</u>.  Any subsequent appeal in any of the remanded cases should be referred for decision to this panel in light of the time it has invested in these matters.  All parties to such an appeal are directed to inform the clerk of our instruction.

FOOTNOTES

1.  We use the term "state authorities" to refer collectively to the various state officials that have filed briefs as appellants or appellees.

2.  Because a defendant sentenced to an indeterminate sentence receives a sentence that is a range of years, rather than a set term, the New York statutes frequently refer to the "maximum term" and the "minimum period of imprisonment."  See, e.g., N.Y. Penal Law § 70.00(2)-(3).  This should not be confused with this opinion's use of the terms "maximum" and "minimum," which are used to refer to the outer boundaries of the sentence, rather than a specific range, that a defendant could permissibly receive.

3.  The PFO statute reads:

> 1.  Definition of persistent felony offender.
>
> (a) A persistent felony offender is a person, other than a persistent violent felony offender as defined in section 70.08, who stands convicted of a felony after having previously been convicted of two or more felonies, as provided in paragraphs (b) and (c) of this subdivision.
>
> (b) A previous felony conviction within the meaning of paragraph (a) of this subdivision is a conviction of a felony in this state, or of a crime in any other jurisdiction, provided:

46

(i) that a sentence to a term of imprisonment in excess of one year, or a sentence to death, was imposed therefor; and

(ii) that the defendant was imprisoned under sentence for such conviction prior to the commission of the present felony; and

(iii) that the defendant was not pardoned on the ground of innocence; and

(iv) that such conviction was for a felony offense other than persistent sexual abuse, as defined in section 130.53 of this chapter.

(c) For the purpose of determining whether a person has two or more previous felony convictions, two or more convictions of crimes that were committed prior to the time the defendant was imprisoned under sentence for any of such convictions shall be deemed to be only one conviction.

2. Authorized sentence. When the court has found, pursuant to the provisions of the criminal procedure law, that a person is a persistent felony offender, and when it is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and life-time supervision will best serve the public interest, the court, in lieu of imposing the sentence of imprisonment authorized by section 70.00, 70.02, 70.04, 70.06 or subdivision five of section 70.80 for the crime of which such person presently stands convicted, may impose the sentence of imprisonment authorized by that section for a class A-I felony. In such event the reasons for the court's opinion shall be set forth in the record.

N.Y. Penal Law § 70.10.

4. Because the maximum sentence for a Class A felon is already life imprisonment, see N.Y. Penal Law § 70.00(2)(a), neither the second felony offender nor the PFO statute alters the maximum sentence for such convicted defendants. Defendants convicted of lesser felony classes (except for a terrorist offense, see N.Y. Penal Law § 490.25(2)(c), of no pertinence here) may be subject to a maximum sentence of life imprisonment only by virtue of the PFO statute, see id. §§ 70.00-70.06, 70.10(2), or the persistent violent felony offender statute, see id. § 70.08(2); see also infra note 5.

5. There are also three increasingly harsh tiers that apply to the sentencing for those convicted of a "violent felony offense." A violent felony offense is specified by statute and includes a broad range of criminal activity. See N.Y. Penal Law § 70.02(1). A first-time felony offender convicted of a violent felony offense is generally sentenced to a determinate sentence based on the class of offense. See id. § 70.02. Moreover, if there is a finding that the violent felony offender was previously convicted of one qualifying prior violent felony conviction, the defendant is sentenced to a determinate sentence as a second violent felony offender. See id. § 70.04.

If there is a finding that the violent felony offender was previously convicted of one qualifying felony conviction, as opposed to one qualifying violent felony conviction, the defendant is sentenced to a determinate sentence as a second

48

felony offender.  See id. § 70.06(6).  While the minimum determinate sentence a second violent felony offender may receive is greater than the minimum determinate sentence a second felony offender convicted of a violent felony may receive, the maximum determinate sentence that may be imposed is the same.  Compare id. § 70.04 with id. § 70.06(6).

Article 70 also includes a persistent violent felony offender provision.  See id. § 70.08.  A persistent violent felony offender, as opposed to a persistent felony offender, is "a person who stands convicted of a violent felony offense . . . or the offense of predatory sexual assault . . . or the offense of predatory sexual assault against a child . . . , after having previously been subjected to two or more predicate violent felony convictions . . . ."  Id. § 70.08(1)(a).  This persistent offender provision requires imposition of an indeterminate sentence with a statutory maximum of life imprisonment solely upon the court's finding of qualifying predicate convictions.  Id. § 70.08(2).  However, this provision is not at issue in this appeal.

6.  The pertinent provision reads:

> [A Class A-I] sentence may not be imposed unless, based upon evidence in the record of a hearing held pursuant to this section, the court (a) has found that the defendant is a persistent felony offender as defined in subdivision one of section 70.10 of the penal law, and (b) is of the opinion that the history and character of the

49

> defendant and the nature and
> circumstances of his criminal
> conduct are such that extended
> incarceration and lifetime
> supervision of the defendant are
> warranted to best serve the public
> interest.

N.Y. Crim. Proc. Law § 400.20(1).

7. With regard to a PFO convicted of a Class C, D, or E felony, there is a sentencing "dead-zone" between the legally-authorized sentencing ranges available to a court. For example, in the case of a PFO convicted of a Class D felony, a court may impose a sentence within a range of 15 years to life imprisonment if it has found facts relevant to history/character/criminal conduct that warrant such a sentence. See N.Y. Penal Law §§ 70.00(2)-(3), 70.10(2). If the court's fact-finding causes it to exercise its discretion not to impose a PFO sentence, then the statutory maximum (if not a persistent violent felony offender) generally available to the court is 7 years. See id. §§ 70.00(2)(d), 70.02(3)(c), 70.04(3)(c), 70.06(3)(d). In such a case, a court may not impose a sentence within a range of 8 to 14 years, as no provision of New York law makes that a legally-authorized sentencing range. See People v. Jennings, 822 N.Y.S.2d 501, 502 (App. Div. 2006) ("If the sentencing court had not found defendant a persistent felony offender, the maximum sentence it could have imposed would have been an indeterminate term of 2 to 4 years, the same sentence defendant received for each of his prior two felonies."); see also People v. Wilsey, 753 N.Y.S.2d

50

232, 233 (App. Div. 2003); People v. Yale, 373 N.Y.S.2d 901, 904-06 (App. Div. 1975). With regard to Class B felons, a different kind of dead-zone exists. These felons may be sentenced within the Class A-I range, but with maximum sentences of 25, see N.Y. Penal Law §§ 70.00(2)(b), 70.02(3)(a), 70.04(3)(a), 70.06(3)(b), 70.06(6)(a), or 30 years, see id. § 70.02(3)(a). The dead zone here is between the maximum term of years and life imprisonment. Such PFOs may be sentenced to life imprisonment if the requisite fact-findings as to history/character/criminal conduct are made. See id. § 70.10(2); N.Y. Crim. Proc. Law § 400.20(1).

8. New York's Penal Law has since been amended, and now violations of New York Penal Law § 160.10(1) are Class C felony offenses.

9. We certified three issues: (i) which date -- that of the entry of the Appellate Division's opinion, the date the New York Court of Appeals denied leave to appeal, or the date upon which the conviction became final -- is the relevant time for determining the applicable Supreme Court precedent; (ii) if Blakely v. Washington, 542 U.S. 296 (2004), applies, whether the state court's determination was an unreasonable application of the holding in that case; and (iii) what is the effect, if any, of People v. Rivera, 833 N.E.2d 194 (N.Y. 2005).

10. The confusion originates with Williams v. Taylor, 529 U.S.

51

362 (2000), which considered the interplay between AEDPA and Teague v. Lane, 489 U.S. 288 (1988). See Williams, 529 U.S. at 412 (O'Connor, J., for the Court). As we noted earlier, the Court read the term "clearly established federal law" as generally codifying Teague v. Lane's rule against retroactive application of cases announcing "new" legal rules. See id. at 390-91 (Stevens, J., for the Court) (citing Teague, 489 U.S. at 301). However, the court gave two different answers as to whether the operative period for assessing "clearly established" law was the same as the period for determining whether a rule is "new" for Teague purposes. Under Teague, the relevant period is "the time the defendant's conviction became final." See Teague, 489 U.S. at 301 (O'Connor, J., concurring). Justice Stevens, speaking for the Court, concluded that the relevant period for AEDPA purposes was the same. See Williams, 529 U.S. at 390 (Stevens, J., for the Court). Justice O'Connor, speaking later for the Court, concluded that habeas courts should look to "clearly established" law at the time of the "relevant state-court decision" or "state-court adjudication." Id. at 412 (O'Connor, J., for the Court).

11. Indeed, the statute in Blakely stated that the maximum sentence for the crime was the higher limit but was held unconstitutional because a "standard" sentencing range with a lower limit was mandatory absent the required findings. See Blakely, 542 U.S. at 299, 303-05.

52